Brooke Weitzman SBN 301037
Benjamin Davis SBN 311409
Elder Law & Disability Rights Center
1535 E 17th Street, Suite 110
Santa Ana, CA 92705
714-617-5353
bweitzman@eldrcenter.org
bdavis@eldrcenter.org

John P. Given SBN 269787
2461 Santa Monica Blvd, #438
Santa Monica, CA  90404
310 471-8485
john@johngivenlaw.com

Carol A. Sobel SBN 84483
Law Office of Carol Sobel
1158 26th Street, $552
Santa Monica, CA 90403
310-393-3055
carolsobellaw@gmail.com
Attorneys For Plaintiffs

Paul Hoffman SBN 71244
John Washington SBN 315991
9415 Culver Bl, vd., #115
Culver City, CA 90232
Los Angeles, CA 90064
310-396-0731
hoffpaul@aol.com

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MARY'S KITCHEN, RICHARD HANCOX, LISA POLLARD, HORACIO AGUILAR, TODD CHRISTOPHER, DON TERRY, STARLA ACOSTA<br><br>                     Plaintiffs,<br><br>vs.<br><br>CITY OF ORANGE<br><br>                     Defendant | Case No.:<br>**COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983.§3604, 42 U.S.C. §12132, 12133, 29 U.S.C. §794(a); CA. GOV. CODE§3604; CA. GOV. CODE §12955, §52.1; CA. GOV. CODE §815.6; CA. GOV. CODE §11135; CA. GOV. CODE §65008** |

## JURISDICTION AND VENUE

1.      This is an action for injunctive and declaratory relief pursuant to 28 U.S.C. § 23(b)(2) and 42 U.S.C. § 1983 for violations of Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, as well as the Federal Fair Housing Act, the Rehabilitation Act and analogous California Constitution and statutory law.  Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202. Jurisdiction for the' supplemental state claims is based on 28 U.S.C. § 1367(a).

2.      Venue is proper in the Southern Division of the Central District in that the events and conduct complained of herein all occurred in Orange County.

## PRELIMINARY STATEMENT

3.      Mary's Kitchen has been the only service provider in the City of Orange ("Orange") for unhoused adults without children for over three decades.  The day shelter operates in furtherance of its religious beliefs to serve those in need of sustenance and a place of respite.  Repeatedly, the City identified Mary's Kitchen as a resource to meet the state statutory Housing Element required for approval of the City's General Plan for development.  Not only has the City put forward Mary's Kitchen's services to satisfy state law mandates, it also identified the day shelter as available services to the United States Department of Housing and Urban Development (HUD), where both the City of Orange and County of Orange held Mary's Kitchen out as a model service provider with no cost to the government.

4.      At its day shelter, Mary's Kitchen provides wrap-around services to approximately 330 individuals, the majority of whom have one or more disabilities,. Since people fall in and out of homelessness, the annual number is significantly higher.  Wrap-around services provided include nutritious meals; a reliable mail address for work and government benefits; hygiene; bathrooms; charging stations

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 2

for electronic devices; clothes and laundry service; and medical services. Critically, it is the only place in Orange that provides a safe place to rest each day. For domestic violence and sexual assault survivors, this is the only place they feel safe in the city. Prayer and bible study, along with community support, assist moving out of homelessness. Because of Mary's Kitchen, women, veterans, and seniors are connected with other providers, find employment, reconnected with family, and some enroll in educational programs to build a better future.

5.      On June 18, 2021, in the midst of a deadly global pandemic, and with the knowledge that a tsunami of newly homeless persons is expected soon, the City Manager acted outside his authority to issue a notice demanding the closure of Mary's Kitchen by September 18, 2021. The existing land use agreement allows operations through 2024. Actions by the City to cause immediate closure of Mary's Kitchen violate state and federal law and put lives of its clients in immediate danger as a direct and anticipated result of the City's actions against the shelter.

6.      In 2018 litigation[1] the City suspended all criminal enforcement of anti-camping laws and committed to a healthcare first approach to homelessness while building capacity for solutions. Nearly three years later, the City has taken no steps to increase services or outreach to unhoused adults without children.[2] If it is permitted to shut down Mary's Kitchen, the pernicious pattern of individual cities causing unhoused people to move from city to city, making them another city's

---

[1] *O.C. Catholic Workers v. Orange County et. al.* Case No. 8:18-cv-00155-DOC-KES (C.D. CA).

[2] The City hosts a County-wide shelter for families with minor children and a medical facility for those with health insurance referred by police for mental-health crisis services. The City has no significant access to shelters in other North SPA cities. Mary's Kitchen may not refer guests to any shelter on its behalf.

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 3

"problem," will repeat.  There is no other provider serving this community in the City, so the migration of unhoused seniors, disabled and economically marginalized persons experiencing homelessness is inevitable.  More importantly, many will likely die if the City's only homeless service provider is closed.

## HISTORY OF MARY'S KITCHEN

7.     In 1984, 82-year-old Mary McAnena found her religious calling helping others. In 1986, the City recognized her program then providing service 5 days per week in Heart Park.  However, in 1992, the City passed an ordinance banning sharing food with the many individuals who relied upon Mary for their basic needs.  In 1993, the City agreed to allow Mary's Kitchen to relocate to a city site at the end of a cul-de-sac in an industrial area next to the police department where their services would be less visible.  In 2000, Ms. McAnena and the City entered into a formal four-year agreement to rent the property at no cost and to pay utility costs.[3]

8.     In 2004, just after Gloria Suess stepped in, the City renewed the lease and expanded the site to allow for additional services. At the time, Mary's Kitchen served about 65 people each day. The lease was renewed again in 2010, and again in 2014, each time recognizing the critical services provided at no cost to the City and the growing need for the assistance Mary's Kitchen provides.

9.     Barely two years ago, in 2019, when the contract was again renewed, the City publicly recognized that the site was "well organized and efficiently run" and referenced the volunteers as "very dedicated to the program." The  discussion at

---

[3] Just three years later, at the age of 100, Mary received the Albert Schweitzer Award of Excellence. At 100, she was still committed to saving lives in a County that disregarded the lives of the poor. She created a place free of judgement to serve people no matter their own personal barriers.

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 4

the City Council noted that, despite an influx in use due to the closure of the Santa Ana Riverbed encampment, the patrons were "behaved and orderly" and that the need had increased to about 200 people per day. The City noted Mary's Kitchen installed a camera system as requested by police and wanted to expand the space used. The City approved renewal of the land use agreement through 2024 and gave the City Manager authority to extend the agreement in 2024.

10.    In early 2020, as the pandemic tore through the country and everyone struggled to adjust, Mary's Kitchen similarly struggled. Initially, it closed, limiting services to food pick-up, use of bathrooms, mail pick-up and emergency needs. With more limited services, and under Covid-19 safety practices, the City was impacted by hundreds of unhoused individuals who no longer had a safe place to wait during the day or the additional live-saving hygiene and water services provided by Mary's Kitchen for more than three decades, without issue.  In or around December 2020, Mary's Kitchen reopened and slowly restored services with new Covid restrictions.

11.    In September 2020, even before operations were fully reopened, the City informed Mary's Kitchen it was concerned about activities outside the gates and wanted the day shelter to hire a private professional security company.[4] The City complaints included the police having to advise people not to be around the property; inadequate monitoring by Mary's Kitchen of the area outside the property after the shelter closed each day; congregating and "loitering" of guests of the service provider outside in the evening; and trash found outside the property. sMary's

_____

[4] The City Notice also alleged issues with activities inside the gate however, at that time food service was take out only so Plaintiffs are informed and believe those were either in error, or were referring to activities outside the gates.

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 5

Kitchen addressed all of these issues and hired a professional security company to take over the intake area of the daytime shelter,[5] at great cost to the Plaintiff. [6]

12.     Over the years, Mary's Kitchen has requested City support to provide additional services, housing navigation, and more.   The shelter also requested authorization to make shelter referrals, required status for many of the County's shelters and local law enforcement.   Mary's Kitchen also requested to purchase the property, or the neighboring property to expand services, all without success.

13.     In August 2021, after issuing the termination notice, the City brought in County services for the first time. That occurred only once in the last month and appeared to be more hype for the media than help for the guests of Mary's Kitchen.[7] There was no provider present to assess and enroll individuals into Telecare, the County's only Full-Service Partnership provider.[8]

---

[5] Agenda Item 3.8 Mary's Kitchen Orange City Council Meeting June 11, 2019.

[6]T The County approved a grant by Supervisor Wagner in early 2021. *See* https://www.facebook.com/DonWagnerCA/posts/780070952631782.   In January 2021, Girl Scout Troup 8257 recognized this critical resource, visiting Mary's Kitchen to donate their cookies sale earnings and distribute clothes, hygiene products, and sunscreen *See* https://foothillssentry.com/issue-archives

[7] The City staff requested that Micah's Way of Santa Ana attend the fair to allow all guests to sign up for mail at their address instead. Micah's Way was not available. If Orange residents are forced to move to Santa Ana to receive critical mail including benefits, DMV, and job-related documents, it will impact the entire region's programs shifting people by forcing them from the North SPA and adding to Santa Ana's already high numbers. The City seems to suggest people should go to neighboring cities with outreach services to be entered into the County coordinated entry system as Orange police officers do not provide that service.

[8] This is the statewide program funded by the Mental Health Services Act to provide wrap-around services to those with severe and persistent mental health conditions.

14.     Mary's Kitchen is a responsible provider of services and met every lawful – and some unlawful – demands from the City to regulate activities at its facility.  Guests of Mary's Kitchen stay inside the fence around the property and comply with strict rules of the day shelter.  The basic rules are posted on the wall and everyone is made aware of them.  In addition, guests must check in with the on-site security guard to ensure anyone temporarily prohibited from entering does not.

15.     Today, approximately 330 people rely upon Mary's Kitchen for daytime shelter and services each week. Others rely on Mary's Kitchen for nutritious meals, job training, and emotional or spiritual support. Until just a few weeks ago, the shelters of North Service Planning Area ("North SPA") brought people to and from Mary's Kitchen daily to ensure their residents could access the critical services offered by Mary' Kitchen. Following the City's lease termination notice, only The Salvation Army continues to partner with Mary's Kitchen[9].

## STATEMENT OF FACTS

16.     Housing and homelessness are crises threatening the lives of people daily.  In Orange County, more than one person without a fixed address dies every day.  During the pandemic, the numbers increased to record rates of death,[10] disproportionately in the City.  In months without full-service at Mary's Kitchen, more people died, reaching record rates of six people per month in July and September 2020. In months with full-service at the shelter, the rate often drops to zero to one deaths.

| Month | Deaths in Orange County | Deaths in the City |
|---|---|---|

[9] It is unclear if the County shelter shuttle is discontinued or simply paused due to a covid outbreak at that shelter.

[10] The data is available and published monthly by Father Dennis Kriz.

| | | |
|---|---|---|
| January 2020 | 23 | 5 |
| February 2020 | 20 | 0 |
| March 2020 | 23 | 2 |
| April 2020 | 34 | 5 |
| May 2020 | 30 | 2 |
| June 2020[11] | 21 | 1 |
| July 2020 | 34 | 6 |
| August 2020 | 27 | 3 |
| September 2020 | 32 | 6 |
| November 2020 | 25 | 5 |
| December 2020[12] | 24 | 0 |
| January 2021 | 40 | 5 |
| February 2021 | 29 | 0 |
| March 2021 | 34 | 5 |
| April 2021 | 32 | 0 |
| May 2021 | 23 | 3 |
| June 2021 | 30 | 2 |
| July 2021 | 39 | 1 |

17.    Although Mary's Kitchen temporarily limited services in its congregate space in the initial state-mandated "stay-at-home" order, as the death toll for unhoused persons rose, it reopened its doors, following CDC guidelines.

18.    The brief daily respite provided by Mary's Kitchen allows people to take steps toward a more secure future. For veterans, it means accessing the assistance earned by their service to the nation. For women, it means not living with the constant vulnerability of sexual assault on the streets for a few hours a day. For people with disabilities, it means a place to accommodate their needs without

---

[11] By this time, seniors and people with disabilities were starting to get some access to Project RoomKey through the County during the pandemic.

[12] This is when the doors of Mary's re-opened to almost full services.

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 8

judgment.  For others, it means some rest and a shower, medical and social services, a modicum of stability and, with luck, reunite with family.

19.     The City exploited Mary's Kitchen for its own benefit as well.  Over the years, it promoted Mary's Kitchen as its only program to meet various state and federal requirements.  It did so to both the HUD and the California Department of Housing and Community Development.  It posted about Mary's Kitchen on its website[13] and to the public about available resources for   homelessness.  Even the police rely on Mary's Kitchen, working with staff to support unhoused people with severe and persistent mental health conditions.

20.     The police vigorously monitor the shelter.  From January to June 2021, 80 arrests occurred near Mary's Kitchen.  One was for a shopping cart violation, three for public drinking, 12 for violations of the municipal code[14], 12 for trespass or lodging on other properties, 35 for outstanding warrants not involving ongoing

_____

[13] Posted on City's website.



[14] These may violate the existing settlement.

crime, 15 were drug related including use of cannabis, one was a parole violation and one a failure to register under PC 290 as a transient in the city.

21.    Since the closure of the Santa Ana Riverbed, many Orange County cities prioritized evidence-based approaches to address homelessness.  Rather than putting people in jail, they have moved to identifying an individual's need and providing housing and shelter, improving outcomes for many at-risk unhoused individuals. Many have developed outreach programs following the best practices in partnership with the County's BeWell program and CityNet.

22.    Orange has not done this and, in fact, made little to no change in its



FW: Mary's Kitchen Area Activity  January 1 to June 21, 2021

GS   Gary Sheatz
     To   Will Kolbow

Subject: RE: Mary's Kitchen Area Activity January 1 to June 21, 2021

Chief,

Here's the revised report for CFS only at 517 W Struck Ave, for all of 2020, and January 1 to June 21, 2021.

There were 85 Calls For Service at 517 W Struck Ave (Mary's Kitchen) between January 1 to June 21, 2021. For all of 2020, there were 143 Calls For Service at 517 W Struck Ave.

**Arrests**

Mary's Kitchen Area  January 1 to June 21, 2021

| Crime Type | # of Arrests |
|---|---|
| Felony Parole Violation | 1 |
| 11362.3 (A)(1) | 1 |
| Drug Charge 11364 (A) | 7 |
| Drug Charge 11377 (A) | 5 |
| Drug Charge  11550 (A) | 1 |
| 118286 (B) | 1 |
| Sex Registrant 290.018(B) | 1 |
| Trespass 602 (O) | 1 |
| Illegal Lodging 647 (E) | 11 |
| Bench Warrant - Felony | 2 |
| Bench Warrant - Misd. | 18 |
| OMC Violation | 12 |
| DRINK IN PUBLIC | 3 |
| OUTSIDE WARR/F | 4 |
| OUTSIDE WARR/M | 11 |
| SHOPPING CART | 1 |
| **Total** | **80** |

Mike Smith
Senior Crime Analyst / TLO
Orange Police Department
1107 N Batavia St
Orange, CA 92867
714 744-7361 (Direct)
714 744-7321 (Fax)
MSmith@OrangePD.org

714 744-7361 (Direct)
714 744-7321 (Fax)
MSmith@OrangePD.org

approach. The City continues to take steps to push its most vulnerable across the borders. The City has no outreach programs, no healthcare staff, no contract agency

– only law enforcement.    As it was at the time the OCCW litigation was filed in 2019, naming the City of Orange as a defendant, the City's law enforcement mission has been to make unhoused person's someone else's problem by pushing people to neighboring jurisdictions.  Indeed, the City was so bold as to put their intentions in writing.  Captain Dan Adams distributed instructions to the police telling them that "they [the homeless] will keep coming back if we aren't consistent.".[15]

23.    In the 2019 Point in Time County the City of Orange had 341 homeless people.  The number of unsheltered individuals has likely grown significantly because of the consequences of the Covid-19 pandemic.  Among other reasons for this expected dramatic increase in people experiencing homelessness, the federal Consumer Price Index ("CPI") reports the cost of renting in Los Angeles and Orange counties rose at a 5.6% annual rate in March, almost a full percentage point above the 4.8% increase a year earlier.  This is the largest increase in housing costs in 12 years. Approximately one-third of unsheltered individuals in Orange County report that they cannot afford housing, even though they are employed. At the same time, Orange County in general and the City of Orange in particular cannot absorb the increased number of unhoused persons.[16]

24.    Since litigation in 2018,[17] cities including Orange have limited criminal enforcement actions against those sleeping outside.  While the City of Orange has

---

[15] 1/21/21 email from Dan Adams on patrol related things

[16] While some new shelters opened in the County in recent years, others closed or reduced capacity. As a result, the shelters of Orange County are almost always at capacity. There were 576 fewer people in shelter in 2021 than in 2020. http://ochmis.org/wp-content/uploads/2021/05/2021-PIT-Report.pdf

[17] O.C. Catholic Workers v. Orange County et. al. United States District Court, Central District of California Case No. 8:18-cv-00155-DOC-KES

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 11

not arrested people from sleeping in public, without any shelter alternative to offer, the Orange Police Department deliberately disrupts the sleep of homeless individuals and directs them to move along.

## NORTH SERVICE PLANNING AREA SHELTERS

25.    The County is split into three planning areas for homeless services.  The City of Orange is in the North Service Planning Area ("SPA").   In addition to County-provided services, many cities in the SPA provide some services for those they identify as "residents" of their city. As a result, many people with disabilities are barred from accessing local services because their status as chronically homeless does not meet City-imposed "residency" requirements.

26.    The City of Orange is the location of a county shelter for families with minor children from any city in Orange County. There is no no-barrier or low-barrier shelter for adults without children, senior or people with disabilities waiting for a placement in the City of Orange other than Mary's Kitchen day-shelter.

27.    There are no "no-barrier" shelters in the County of Orange.  The County operates The Bridges at Anaheim, the only County emergency shelter in the North SPA.   In addition, there are approximately 200 beds at shelters with residency barriers in Buena Park and Placentia.  Although originally expected to serve all cities in the North SPA per the settlement agreement entered in OCCW, the Court subsequently altered the agreement and allowed a residency requirement for the cities where the shelters are located.  These shelters require admission by referrals only. No beds in either shelter are reserved for the use of residents of Orange or guests of Mary's Kitchen day-shelter.

28.    Because Orange does not contract with any approved referral agency, such as City Net, and will not approve Mary's Kitchen to make referrals, only Orange police officers may make shelter referrals to a facility such as Bridges.

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 12

Compounding the fact that there are very limited beds available to begin with, this makes it very difficult for a resident of Orange to get into any shelter.

29.     During the pandemic, Bridges and Buena Park converted to "high-barrier" shelters, limiting residents' daytime movement, becoming inaccessible to individuals with trauma or mental health conditions who required the ability to leave during the day to reduce the trauma in the shelter environment. The restrictions also made them untenable for many survivors of domestic violence or sexual assault. Placentia is the only "low-barrier" shelter, but it prioritizes residents.  It is almost always full because of a side deal with the City of Stanton, contrary to the settlement agreement in OCCW.

## THE MANDATORY DUTY TO PROVIDE FOR SENIORS, PEOPLE WITH DISABLITIES, LOW INCOME AND UNHOUSED INDIVIDUALS

30.     In 1982, California passed the California Housing Accountability Act. California Government Code § 65589.5.  Formerly known as the Anti-NIMBY law, the statute bans discrimination against housing for lower-income households.  The legislature declared that the provision of housing for all Californians is a "priority of the highest order." §65580.

31.     Under this provision, every city and county is required to adopt a General Plan governing land use and development projects in its jurisdiction.  The General Plan includes a "Housing Element," one of seven mandatory components to the General Plan that must be addressed and approved by the State of California's Housing and Community Development Department ("HCD").   The Housing Element is prepared every 10 years.  Submission to, and approval of, the Housing Element by HCD is a necessary prerequisite for local governments to qualify for public funding for various development programs.

32.     The Orange City Council is the governing entity for the City. It is responsible for developing and implementing the General Plan, including addressing the need for housing and shelter for low-income and homeless individuals.

33.     Each local entity must act consistently with its General Plan and housing element.  All land use decisions, zoning codes, the General Plan and all other ordinances and policies affecting land use must be consistent with the housing element. §65580.5, §65860.  All local land-use decisions, including site specific plans, must be consistent with the adopted General Plan. §65454.

34.     In 2007, California passed Senate Bill 2 (SB2).  SB2 extended the protections of the Housing Accountability Act to emergency shelters and clarified that it also covers transitional and supportive housing.  This measure imposed increased requirements on cities and counties for low-income housing, emergency shelters and transitional/supportive housing.  Each city and county must evaluate its need for shelters and provide a comparison to available facilities to address the identified need.  The need for emergency shelters must be assessed annually and seasonally.  §65583(a)(7).

35.     Each entity must also designate at least one location where a year-round shelter may be operated without further approval by the local government.  The designated location or locations for shelter must have sufficient capacity to meet the entity's entire local need for emergency shelter.  The designated location may then be used by right, subject only to reasonable zoning restrictions. Mary's Kitchen sits in the City of Orange's designated zone in its Housing Element. Despite repeated requests by Mary's Kitchen, the City has not permitted the day shelter to include overnight services or expand its footprint for daytime services.

36.     The express legislative intent of SB2 was to expand the Housing Accountability Act to prevent local entities from denying a proposal to create an

eligible facility if it is needed and otherwise consistent with the locality's zoning and development standards. Recognizing the NIMBYism the statute was enacted to combat, the Legislature expressly prohibited the ability of local entities to impose hurdles such as "a conditional use permit or any discretionary" approval from the local government. §65583(a)(4)(A).

37.     The statute enumerates factors that may be imposed on a proposed facility. These include, but are not limited to, the number of beds or persons served, off-street parking restrictions, outside lighting, etc. §65583(a)(4)(A)(i)-(viii). However, the local entity has the burden to establish that any restrictions imposed on a proposed facility, as well as any permit processing standards applied, are objective and directly advance the creation of emergency shelters. If the local entity has an existing shelter that satisfies the statute's intent, a conditional use permit or similar prerequisite may be required to open a new shelter in the same community. Otherwise, the unreasonable denial of a permit for a shelter, as here, is a denial prohibited by statute without the required explanation for the City's decision.

38.     The Housing Accountability Act provides that an entity shall not "disapprove" a proposed emergency shelter unless it makes written findings, based on substantial evidence, that one of five exceptions are met. §65589.5(d). The allowed exceptions are: (I) the jurisdiction has met or exceeded the need for emergency shelter identified in its housing element; (2) the project would adversely impact the public health or safety in a significant, quantifiable, direct and unavoidable way that cannot be mitigated; (3) denial is required to comply with specified state or federal law and there is no way to comply without rendering the shelter project infeasible; (4) the shelter is proposed on land zoned for agriculture or resource preservation; and, (5) the shelter is inconsistent with both the zoning ordinance and general plan land use designation (but this reason is not allowed if the

city failed to identify the mandated "by right" zones, or that its zones have sufficient capacity to accommodate the need and failed to demonstrate that the zones can accommodate at least one emergency shelter). §65589.5(d)(l)-(5).

39.    Local entities may satisfy the mandate of SB2 in several ways. Jurisdictions that are successfully implementing a supportive housing program model under the entity's 10-year plan to End Chronic Homelessness are credited for supportive housing units created under the 10-year plan if the entity can demonstrate that the units are identified in the 10-year plan and are either currently vacant or have all funding needed to construct the units during the planning period.

40.    Local entities may also meet the requirements of SB2 by entering into a multi-jurisdiction agreement provided that any emergency shelter will be opened within two years of the start of the planning period.  Gov. Code §65583(d)(1). Entities involved in a joint project must adopt an agreement which, among other conditions, assigns a portion of the new shelter to each jurisdiction.  Specifically, the agreement "shall allocate a portion of the new shelter capacity to each jurisdiction as credit toward its emergency shelter need …"  §65583(d)(1)(2). Also, the housing element for each participating local government must set out the following: the method for allocating bed capacity for the shelter; how the jurisdiction's emergency shelter need is met by the proposed facility; the amount of the financial contribution each entity will make for the development, operation and ongoing management of the shelter; the amount and source of money to be contributed to the shelter; and, finally, that the aggregate total capacity claimed by each participating entity in its housing element is not greater than the total beds available at the shelter.  § 65583(d)(1)(3)(A)-(C).  In other words, if several cities enter in a multi-jurisdiction agreement for a 200-bed shelter, they may not each claim all 200 beds as evidence that they have complied with the mandate to provide shelter resources.

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 16

41.     Defendant City of Orange completely failed to meets it statutory burden while denying Mary's Kitchen's requests to expand services and now acting to shut down even the day shelter. The City has no emergency shelter in its boundaries and no exclusive use of beds for a homeless adult anywhere in the County.  Beds that are not for the exclusive use of Orange may not be counted for Gov. Code § 65583(d)(1)(2) and (3)(A)-(C).

42.     The shelter resources Defendant lists in its Housing Element are located in other cities or restrict services based on a variety of categories.  The State approved 5th Cycle Housing Element lists services that a shelter may provide. The list is nearly identical to what is provided at Mary's and not available at any other provider within the City. On page H-59 the City specifically lists Mary's as its provider. The day-shelter cannot offer overnight beds since the City does not permit it and, even if there was an overnight shelter, it could not offer the services at Mary's Kitchen as it the City code requires overnight shelters close from 9:00AM to 5:00PM daily. The Housing Element states that "the city shall provide support for nonprofit entities ... to provide a range of services and housing opportunities for homeless persons in Orange."[18]

43.     Mary's Kitchen is in an area designated as an appropriate place for a shelter and identified as a site in the General Plan as mandated by Government Code §65583. Mary's Kitchen has offered to purchase this site and surrounding land from the City to increase services and have greater wrap-around capacity. A draft plan was submitted for the City to review the expansion. Again, there is no lawful basis for the City to violate Government Code §65583.

---

[18] Appendix C-16 Action 27:Orange 5th Cycle Housing Element approved by HCD.

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 17

## LIABILITY FOR FAILURE TO PROVIDE
## HOUSING AND SHELTER

44.     California Government Code § 815.6 provides that: Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

45.     The requirement to provide for the basic needs of low-income and homeless individuals in the General Plan and to adhere to the government code is an "obligatory duty which a governmental entity is required to perform," not a permissive one.   Failure to meet this duty gives rise to liability whether the underlying enactment allows a private right of action or is self-executing.  The term "enactment" includes "a constitutional provision, statute, charter provision, ordinance or regulation." Cal. Govt. Code §810.6.

46.     The City of Orange municipal code, 17.13.040 requires clients of traditional overnight shelters vacate the facility each day and limits services to 45 days. The average time to access services in the Orange County Coordinated Entry system is significantly more than 45 days. The failure of the City to meet its obligations under the Housing Accountability Act falls particularly hard on disabled individuals.  They face the additional burden of being required to travel considerable distances to obtain the most basic of social services because there are no such services in their communities.  They must carry all their possessions with them, more often making them a target of local law enforcement as they attempt to navigate the route to obtain services in the few areas of the County that offer it.

## CLASS ALLEGATIONS

47.     The claims set forth in this action are brought by Plaintiffs on their own behalf and on behalf of all of those similarly situated putative class members pursuant to Fed. R. Civ. P 23(b)(2).

48.     The Class is defined as:

a.     All persons who are experiencing homelessness in the City of Orange.

b.     All disabled persons experiencing homelessness, including those diagnosed as having severe and persistent mental illness ("SPMI") and qualified for Full Service Partnership ("FSP") placements, who have not received reasonable accommodations for their disability.

49.     The members of the class are so numerous that individual joinder of all members is impracticable, if not impossible.  Plaintiffs are informed and believe and on that basis allege that members of the primary class will exceed 330 in number. Similarly, based on the information and belief, the members of the sub-class will exceed 110 individuals, or approximately 30 percent of the total number of people experiencing homelessness in the City of Orange and served by Mary's Kitchen.

50.     There are common questions of law and fact that predominate over any questions affecting only individual class members in this instance.

51.     Among the common questions of law and fact are the following:

52.     Whether the Defendant met its statutory duty to provide low-income housing and a continuum of shelter facilities as required by California Government Code § 65589.5;

53.     Whether Defendant's failure to provide programs or services to assess the need for and make reasonable accommodations for unhoused people with disabilities violates and continues to violate Plaintiffs' state and federal statutory rights;

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 19

54. Whether Defendants planned actions will create a danger to the lives of unhoused people in the City;

55. Whether injunctive relief restraining further unconstitutional and unlawful acts by Defendant should be ordered by the Court and, if so, the nature of that injunctive relief;

56. The Class Representatives will fairly and adequately protect the interests of the Class. They have retained counsel who are experienced and competent in class-action and civil rights litigation. The Class Representatives have no interests that are adverse or antagonistic to those of other Class members.

57. A class action is superior to any other method to secure a fair and efficient adjudication of this controversy. As the relief sought for the class is injunctive in nature, the burden and expense make it impractical for class members to seek redress individually for the wrongs done to them. No class damages are sought.   Individual litigation by each class member would necessarily burden the judicial system and run the risk of inconsistent judgments.

58. Plaintiffs are informed and believe and on that basis allege that the City acted on grounds generally applicable to the class, making injunctive or declaratory relief appropriate for the class as a whole.

**PLAINTIFFS**

59. Plaintiff **MARY'S KITCHEN** ("Mary's") is a nonprofit 501(c)3 organization. Its mission is to provide basic services to support and enhance the quality of life for the economically marginalized and unhoused people in Orange. The organization operates through donations and is a low-barrier provider open for daytime services six days per week. Mary's is predominately staffed by volunteers, including some whose lived experience and current housing status inform their

compassion. Volunteers are called to provide services and assist guests to overcome barriers to returning to a stable means of support.

60.    Gloria Suess is the CEO of Mary's Kitchen. Now in her 80's, Ms. Suess has led the organization almost every day since the founder, Mary's passing in 2003. She engages with each person she meets and helps them connect with available resources. She observes an estimated 300-400 people in any month of 2021 who rely upon Mary's Kitchen for life-sustaining services not available elsewhere in the City. Some people visit daily, others only a few days per week.

61.    For many years, Ms. Suess observed actions taken by the cities and county to exclude those experiencing homelessness from their jurisdictions, including removal of benches that the individuals could lawfully sit on, restricting parking hours in the area to deter people living in their vehicles, increasing police and private security presence, and other tactics to pressure people to leave the City and surrounding area. She is acutely familiar with available local social services and knows of no place in and around the City where people with marginalized income, or housing insecurity can obtain the services offered at Mary's Kitchen.

62.    Based on nearly two decades of experience and countless hours,she is aware that a significant portion of the guests at Mary's Kitchen have a variety of disabilities – physical, cognitive, medical, mental – some compounded by their status as seniors.  She has formed the belief that, as the result of the Defendant's policies, practices and customs, and those of the Defendant's agents and employees, the community served by Mary's Kitchen would be left without any daytime shelter in the City or other placement that accommodates their disabilities, meets their basic hygiene needs, and addresses their food insecurities. The community members without a fixed residence would be without adequate food, water, and a whole host of other critical social essentials if they did not have access to Mary's Kitchen.

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 21

63.     Plaintiff **RICHARD HANCOX** has lived in the City of Orange on and off for over seven years and has been coming to Mary's Kitchen during that time. He suffers from multiple disabilities including a type of skin cancer that substantially limits his vision, as well as a mental health condition.  He relies on many of the services at Mary's including food, laundry, donated clothes and cell phone charging to ensure he does not miss lifesaving medical appointments, showers and hygiene, mail, and connections to medical providers. Beyond that, Mary's Kitchen provides him with respite from the unyielding stress of life on the streets. Mr. Hancox has no alternative for the vital, life-sustaining services provided by Mary's Kitchen.  To date shelters in other cities have been unable to accommodate his mental health needs. No City or County service provider offered him any housing opportunities. The support at Mary's Kitchen allows him to get the medical care he needs.

64.     He is diagnosed with a major depressive order.  When he has stayed in shelters, his condition is severely exacerbated by the environment, causing substantial anxiety and mistrust. Despite multiple requests for long-term housing, he has not been offered any appropriate placements, let alone any opportunities.  He is concerned that if he is forced back into a shelter, his disabilities will be increased.

65.     On many occasions, Orange Police officers have directed Mr. Hancox to leave or avoid public spaces. Sometimes he was waiting to enter in front of Mary's Kitchen. Other times he was woken up while sleeping in a public space and instructed to move along. Yet other times he was simply sitting on a bench in a public space and directed to leave because police felt he was loitering. To avoid harassment for waiting in front of Mary's Kitchen, Mr. Hancox began waiting at a bus stop about two blocks away. The City then removed the bench and shade cover, putting him at greater risk in his ongoing battle with skin cancer.

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 22

66.     Plaintiff **LEASA POLLARD** became homeless while fleeing domestic violence. She later experienced sexual assault in a shelter. She has considerable trauma from those events. Having a safe place during the day is critical. She has at times had employment while homeless but struggled to maintain employment. Instead, she is now a volunteer at Mary's Kitchen. In a safe place that understands her trauma she is able to gain experience and work toward stability.

67.     Ms. Pollard relies upon Mary's Kitchen for services including mail to receive her benefits, showers, nutritious meals, and  safety from the dangers faced by a single woman without housing. She is certain that she and other unhoused women will be in immediate and life-threatening danger if they lose access to Mary's Kitchen, where they find a safe environment free from sexual harassment.

68.     Plaintiff **HORACIO AGUILAR** does not have any hope that he will be given any options other than Mary's Kitchen because he does not qualify for most housing programs. Mr. Aguilar is disabled and does not meet the requirements necessary for stable employment. His disability is aggravated by the noise and crowding in congregate shelters.

69.     He relies on Mary's Kitchen for food, water, showers, respite, and more. He is certain that without Mary's, his primary source of income of recycling would not be enough to even replace the food he gets, let alone all of the other services. Mr. Aguilar has limited mobility and cannot physically travel great distances to get different services or see a doctor. He waits at Mary's Kitchen for assistance when doctors visit and believes his life would be in substantial danger and his health would be far worse if Mary's Kitchen was not available to him.

70.     Plaintiff **STARLA ACOSTA** has been in Orange for three years. While she has tried many times to get into different shelter programs in other cities, the congregate setting has exacerbated her disabilities. They also put her at higher risk

for complications related to her chronic medical condition. Ms. Acosta relies on nutritious food support from Mary's Kitchen to meet her basic needs. She visits Mary's Kitchen daily. The respite Mary's Kitchen provides is critical to her mental health. She also relies on the doctors that visit Mary's to supplement her comprehensive care needs.

71.    Ms. Acosta uses almost all the services available at Mary's Kitchen. The City has not offered her any housing solutions or assistance. While she does have the safety of her vehicle overnight, she struggles to find safe places to rest or access to bathrooms, showers, and more. This is especially important given her many medical needs. Without Mary's Kitchen, she believes her life would be in danger.

72.    Plaintiff **TODD CHRISTOPHER** is a Navy veteran with an honorable discharge. He served for 16 years from 1976 until 1992 and obtained Veterans Affairs Supportive Housing seven years ago. Despite VASH, Mr. Christopher's housing has been unstable. His first placement ended when compensation for a rent increase was denied by the government agency, next due to a conflict with neighbors, and last when he did not have sufficient income to pay his portion of the rent. When he falls back into homelessness, he turns to Mary's Kitchen for critical support. He knows many other veterans who similarly rely on the services.

73.    Mr. Christopher relies on Mary's for food, showers, mail, phone charging, access to visiting doctors, and other services. He suffers from a medical condition but lost his medication when he was evicted from the Veterans housing placement. No City programs have offered to help him replace his medicines so he turns to Mary's Kitchen to assist him with his basic needs. Because of his limited resources, he travels to Costa Mesa to get food on Sundays when Mary's is closed. The trip is a difficult one for him and would be even more difficult to make on a

COMPLAINT: CLASS ACTION: FRCP 23(B)(2) 42 U.S.C. §1983. - 24

daily basis if Mary's closed. He does not know any way he could meet his needs without Mary's Kitchen other than to leave the city.

74.     Plaintiff **DON TERRY** is a Vietnam veteran with an honorable discharge. Mr. Terry has been without housing since the 1990s. He has a Substance Use Disorder. He does not have a case manager and mainly relies on Mary's Kitchen for support to manage the SUD. Despite his condition, he successfully complies with the strict rules at Mary's Kitchen and helps to ensure others do the same. That includes ensuring that no drugs or alcohol come through the gates onto the property. The availability of support without judgment at Mary's helps him with his SUD.

75.     Due to the repercussions and trauma from his time in Vietnam, he cannot stay in a congregate shelter. He does not fit well with other available support options, and no other provider offers or provides the same level of nutrition and support without judgement as Mary's. He is motivated to keep going by the help he gets from the good hearts of the Christians who volunteer at Mary's. He and others like him who do not fit into any other existing programs rely on Mary's Kitchen for mail, nutrition, support, clothes, and more.

76.     Defendant **CITY OF ORANGE** ("CITY") is a government entity with the capacity to sue and be sued.  The departments of  ORANGE include the Orange Police Department.  Employees of ORANGE engaged in the acts complained of herein pursuant to the policies, practices and customs of the CITY.

77.     The Defendant, its employees and agents, participated personally in the unlawful conduct challenged herein and, to the extent that they did not personally participate, authorized, acquiesced, set in motion, or otherwise failed to take necessary steps to prevent the acts that resulted in the unlawful conduct and the harm suffered by Plaintiffs. Each acted in concert with each other. The challenged acts caused the violation of Plaintiffs' rights.

78.    The identities and capacities of defendants DOES 1 through 10 are presently unknown to plaintiffs, and on this basis, Plaintiffs sue them by fictitious names. Plaintiffs will amend the Complaint to substitute the true names and capacities of the DOE defendants when ascertained.  Plaintiffs are informed, believe, and thereon allege that DOES 1 through 10 are, and at all times relevant herein were, employees and/or agents of the CITY and are responsible for the acts and omissions complained of herein. Defendants DOES 1 through 10 are sued in their official and individual capacities.

**FIRST CAUSE OF ACTION**
**Right To Due Process of Law; Liberty Interest 42 U.S.C. § 1983**
**Fourteenth Amendment**

79.    Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth hereat.

80.    The due process clause of the Fourteenth Amendment prohibits government officials, and those acting in concert with them as their employees and agents, from depriving persons of their rights without due process of law.  It also protects the liberty to loiter for innocent purposes.

81.    Plaintiffs and people in similar situations in a city with limited services for unhoused adults other than Mary's Kitchen often have nowhere to go. As a result, they are forced to remain in public space. They do this with the innocent purpose of having no alternative, which does not constitute "loitering."

82.    Defendant lacks an adequate system of care with standards and guidelines for assessing and addressing the needs of homeless individuals in the City of Orange.  As a consequence of this omission, Plaintiffs' rights to due process of law were violated in several ways, including denial of access to programs and placements for which they were qualified based on their disabilities and their status

as unsheltered persons. The Plaintiff class has a property interest in these government benefits and programs and were entitled to a fair and equitable process for providing and denying access to such benefits and programs.

83.     In addition, Plaintiffs' right to due process of law was violated by each of the Defendants through the application of constitutionally vague laws used to threaten, intimidate, coerce, cite and arrest Plaintiffs for, inter alia, "camping" in public, loitering, and placing their possessions on public property when they have no other place to put it. The City's laws violate the Fourteenth Amendment because they are so vague as to be impossible to comply with. The unlawful orders to the homeless to move along or be subject to arrest for camping or loitering are directed toward intimidating plaintiffs. Similarly, under Orange Municipal Code §12.66.020, using "extra clothing" is a crime if the person using that clothing appears to be living outside without defining the terms. Provisions similar to the Defendant's loitering ordinance have been repeatedly found unconstitutionally vague and overbroad and a violation of the Fourteenth Amendments "liberty" interest.

84.     The acts and omissions of Orange, as described herein, violate the constitutional rights of Plaintiffs under the Due Process Clause of the United States Constitution. The wrongful conduct complained of herein was the product of a policy and practice of the City, and was not the product of accident or inadvertence, or random. In so doing, Defendants were deliberately indifferent to the rights of Plaintiffs and the class they represent and acted in willful and reckless disregard of the rights of Plaintiffs and the class.

85.     Plaintiff Mary's Kitchen was denied due process of law repeatedly when the City refused to consider its request for shelter operations in the City in a zone approved for such facilities, as well as when the City recently issued a notice of termination without following state-mandated requirements for written

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 27

documentation of the specific items required to be address by the state before a shelter permit may be denied or revoked.  Plaintiff Mary's Kitchen had no adequate notice since the City did not file the statutory notice requirements and, thus, no opportunity to a fair hearing before the City unilaterally cancelled the contract for use of the property as a shelter for decades.  On information and belief, Plaintiff alleges that the reason why Defendant City has taken this adverse action is because of the services provided by Mary's Kitchen to a class of persons marginalized by society.

## SECOND CAUSE OF ACTION

### Right To Be Free of Unconstitutional Conditions; 42 U.S.C. § 1983

86.     Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth hereat.

87.     The City has sought to impose unconstitutional conditions on Plaintiffs as a condition to operate.  The government may not impose a choice between a government benefit and the exercise of a constitutionally guaranteed right, here the right to associate and the right to be present in a public space when there is no unlawful intent ("loitering). Similarly, the seems to demand that Mary's Kitchen deny services to some people based on disabilities, perceived or actual, that may make them unable to obtain employment or increase their income or make them an inappropriate fit for existing shelter programs. The City has even requested that Mary's Kitchen discriminate in its volunteers by only accepting those with housing or without mental health conditions. If the government could deny a benefit because of constitutionally protected activity or associations, exercise of those freedoms would in effect be penalized and inhibited. The Supreme Court invokes this doctrine for various government actions.

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 28

88.     The land use agreement between Orange and Mary's Kitchen is a government benefit that falls under the doctrine of unconstitutional conditions.

89.     The City attempts to terminate this agreement because it alleges Mary's Kitchen staff have failed to stop people from congregating outside its gates, even when the day-shelter is not open. The first and fourteenth amendments protect the right to engage in free speech, congregate, and loiter for innocent purposes. The condition that requires Mary's Kitchen interfere with such conduct to maintain operations is an unconstitutional condition.

90.     The City can and should enforce valid criminal law in and around Mary's Kitchen. Staff welcome law enforcement to do just that. However, any acts by the city to terminate the benefits to Mary's Kitchen and its guests because of its alleged failure to implement unconstitutional conditions and laws violates the rights of each Plaintiff.

### THIRD CAUSE OF ACTION
### State Created Danger
### Violation of the Fourteenth Amendment (42 U.S.C.§1983)

91.     Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth hereat.

92.     The City is aware that Mary's Kitchen is the only provider for adults without minor children in Orange. The City issued a notice of termination demanding the property be vacated by September 18, 2021. The City has not secured an alternative day shelter with the same minimum wrap-around services to begin operations before that date.

93.     Without access to nutrition, water, restrooms and hygiene, people's lives will be in danger during the ongoing pandemic and heat.

94.     Without access to mail, people will be unable to received expected items from the DMV, state benefits, employers, and others that are necessary for

their survival. Many individuals receive their benefits including social security or unemployment via mail at Mary's Kitchen and have no alternative.

95.     Without access to charge phones, and rest during the day, many people would be unable to communicate with their employers, doctors and families. Similarly, those with disabilities will be unable to safely stay out of the public eye.

## FOURTH CAUSE OF ACTION
### Ultra Vires
### Orange Municipal Code 3.08.095, California Environmenental Quality Act (CEQA)

96.     Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth here.

97.     The Orange Municipal Code provides an explicit process for making the decision to end a City contract.  The termination notice issued to Mary's Kitchen was issued and signed by the City Manager without following the express process set forth in the Municipal Code and without authority as required by the Code.  There was no public meeting or action to designate the authority to the City Manager. Orange County municipal code requires that contracts not specifically covered by the Code be approved by the City Council and signed by the Mayor.  The only authority vested in the City Manager with respect to the contract with Mary's Kitchen was to renew it in 2024, not terminate it in 2021.

98.     The City land use decisions must be made in public meeting by the City Counsel. All past land use agreements with Mary's Kitchen were properly signed by the Mayor with vote of the City Council. With no authority to act, no public meeting, and therefore no valid notice, any action the City takes to seize the land would be without any authority.

99.     The City did not do any environmental review and did not file a notice of exemption. The City did not do an environmental impact report, approve a

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 30

negative declaration, or a mitigated negative declaration. Every discretionary action approved or carried out by the City requires consideration of whether the California Environmental Quality Act applies. For any CEQA determination made by a non-elected decision-maker, including that CEQA does not apply to a project, the City is obligated to provide for an appeal to the City's elected decision-making body.

100.   The closure of Mary's Kitchen is both a project and a lease/license for the use of land. Either would require evaluation of potential environmental impacts. Here, the City failed to evaluate the potential environmental impact of displacing hundreds of people, removing necessary bathrooms and showers, and repurposing the property that has served as the City's Day shelter for decades.

101.   After the notice was issued, the City had a closed session meeting. The agenda did not include any mention of land use or Mary's Kitchen. Any discussion in that meeting or action arising from that meeting were in violation of the Brown Act and are therefore void. Despite failure to obtain authority to issue or act on the notice, the City expressed its intent to move forward with seizure of the land.

102.   Unless the Defendant is enjoined from continuing its course of conduct for engagement with the Plaintiff class, Plaintiffs will suffer ongoing and irreparable injury to their rights.  Plaintiffs seek injunctive relief to prevent these injuries.

## FIFTH CAUSE OF ACTION
### Violation of First and Fourth Amendment; 42 U.S.C. 1983

103.   Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth hereat.

104.   When Mary's Kitchen is not open, Plaintiffs are left with nowhere to go. Individuals often wait in public space in the city of Orange, sometimes on the same street as Mary's Kitchen. Here the associate with other people with disabilities

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 31

and unhoused persons, make appointments to meet case workers, or wait for shuttles to and from County services.

105.   Prior to the initiation of this action, each of the Defendants repeatedly and consistently were stopped, detained, interrogated and ordered by law enforcement to move along from public places where they have a right to be pursuant to the First and Fourteenth Amendment.  The stops and subsequent detentions and interrogations constitute unlawful seizures as they were done without reasonable suspicion or probable cause to believe that the individual had or was about to commit a crime other than a purported violation of a law necessitated by their status as homeless individuals plus the lack of available shelter.

106.   Plaintiffs, as everyone else, have a First Amendment right to be present in a public space, to "loiter" in a public space for no reason and to not be excluded from that space by threat, intimidation or coercion because they are homeless. Since the closure of the Riverbed and the Santa Ana Civic Center encampments, and since the expiration of the County's placements of the Plaintiff class in motels, recuperative care, FSP placements, sober living facilities and the closure of the armories, the Plaintiff class is, again, being stopped, detained, interrogated, ordered to move from public places and, in many instances, cited and  arrested by Defendants for crimes directly resulting from the fact that they have no place to live other than in public spaces.

107.   The Orange Police Department has a policy and practice of threatening individuals who sleep or sit in public places or exhibit other behaviors which Orange considers "loitering".  The Orange Police Department also has informed its officers that they should have "zero tolerance" for the homeless.

108.   These policies and practices produce municipal liability under *Monell v. Dep't of Soc. Svcs.,* 436 U.S 658 (1978).

109.    The citation and threats of citation for "the use of public streets or public property for living accommodation or habitation purposes" when there is inadequate shelter available violates the Eighth and Fourteenth Amendments of the United States Constitution and Article 7, §17 of the California Constitution.

110.    There is an actual controversy between Plaintiffs and the Defendants concerning the threat of citation if Plaintiffs remain and sleep on public property with their personal possessions when they have no alternative location to be that will not violate Defendants' laws.  Plaintiffs desire a judicial determination of their rights and duties and a declaration as to Defendants' obligations.

111.    As a direct consequence of Defendants' past and threatened future actions, Plaintiffs have suffered and will continue to suffer a violation of their constitutional rights.   Plaintiffs have suffered damages in the form of pain and suffering as a result of Defendants' policies, practices and customs.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF FAIR HOUSING ACT**
**42 U.S.C. § 3604 and California Gov. Code § 12955 et seq.**

112.    Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth hereat.

113.    Under the Fair Housing Act, a dwelling is "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families ...." 42 U.S.C. § 3602(b).  Emergency and bridge shelters, transitional housing, assisted living and recuperative care facilities, sober living facilities, room and board facilities are all subject to the Fair Housing Act ("FHA") whether publicly or privately owned and operated.  The Fair Housing Act requires that an entity not discriminate on a number of bases, including disability.

114.   Defendants are aware that guests of Mary's Kitchen and class representatives are members of protected classes. As such, they have protections

under FHA. Government action that would close the doors of Mary's Kitchen would take away the only no-barrier daytime shelter that people with disabilities rely on. Without a complete alternative, this discriminatory impact is inevitable.

## SEVENTH CAUSE OF ACTION
## VIOLATION OF THE 14TH AMENDMENT; ART. I, § 13

115. Plaintiffs reallege and incorporate the allegations set forth in the proceeding paragraphs as through fully set forth hereat.

116. Defendants' conduct, as described herein, constitutes a denial of equal protection to the Plaintiff class based on their status as homeless individuals coupled with their presence in public spaces and the lack of available appropriate housing options, from shelters to permanent and supportive housing. The equal protection clause prohibits the Defendants from making determinations about access to government programs on the basis of the Plaintiff class's indigent status.

117. As individuals with disabilities and as homeless persons, they have been subjected to selective and discriminatory application of the laws and programs, which has had both a discriminatory intent and a discriminatory purpose. As individuals with disabilities and as homeless persons, they have been the subject of selective and discriminatory application of the laws and programs as a result of bias, negative attitudes, animosity and fear directed at the unsheltered community and disabled persons, all done with the intent to harm a politically unpopular group. Plaintiffs and the class that they represent have been intentionally treated differently from others similarly situated and with no rational basis for the difference in treatment as a result of Defendants' willful, malicious and unlawful acts.

118. As a direct and proximate consequence of Defendants' actions, Plaintiffs have suffered and continue to suffer a loss of constitutional and statutory rights and pain and suffering. The individual Plaintiffs are entitled to compensatory

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 34

damages for injury to their person and the Plaintiff class is entitled to injunctive and declaratory relief.

## EIGHTH CAUSE OF ACTION
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (42 U.S.C. § 12132; 42 U.S. Code § 12133; 29 U.S.C § 794a)

119.   Plaintiffs reallege and incorporate the allegations set forth in the proceeding paragraphs as through fully set forth hereat.

120.   The American with Disabilities Act protects individuals with disabilities against governmental action that constitutes intentional discrimination when the government entity knows or should know that its conduct is substantially likely to result in harm to an individual's federally protected right and, nonetheless, continues its unlawful action.

121.   Plaintiffs in the disabled class are qualified individuals with disabilities within the meaning of the ADA. Despite knowing this, the City has not provided any reasonable accommodation to meet their needs.

122.   In this instance, Defendant City engaged in intentional discrimination against the class based on their disabilities by intentionally and arbitrarily denying them access to benefits and programs to which they were otherwise eligible. Defendant City is targeting those with severe mental health conditions and working to make life in the City untenable without taking any steps to provide for their needs. In at least one case, a person with such a condition was sent to Mary's Kitchen from BeWell, a County provider, as they were unable to provide services beyond a limited program and had no exit plan. Families from the County shelter also have often frequented Mary's Kitchen for services as they can walk there. In other instances, people with disabilities like Plaintiffs Hancox were directed to move along despite their disability related needs.

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 35

123.   In doing the acts complained of herein, Defendant has acted knowingly and with deliberate indifference to Plaintiffs' disabilities and the harm substantially likely to occur to them as the result of Defendant's unlawful policies and practices. Defendant has accomplished these unlawful acts by using federal and state funds in ways that discriminate against qualified disabled persons.

### NINTH CAUSE OF ACTION
### Violation of California Civil Code § 52.1

124.   Plaintiffs reallege and incorporate the allegations set forth in the proceeding paragraphs as through fully set forth hereat.

125.   The Defendants' conduct, as described herein, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise and enjoyment of Plaintiffs' rights as secured by the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution or laws of the United States, and of the rights secured by the Constitution or laws of the state of California.

126.   Defendants have engaged in concerted and repeated conduct to cite and arrest Plaintiffs under unconstitutional ordinances, on their face and as applied, and threatened to cite and arrest them repeatedly.  Defendants engaged in coercive and intimidating tactics by conducting unwarranted stops and collecting information on Plaintiffs to push them out of Defendants' respective jurisdictions.

127.   Defendants' actions are the proximate cause of the harm suffered by the individual Plaintiffs, who are entitled to compensation for their pain and suffering.

128.   Defendants' continued use of threats, intimidation, coercion against Plaintiffs and the class they represent is ongoing and will continue unless and until the Court enjoins this unlawful conduct.

### TENTH CAUSE OF ACTION
### Violation of California Government Code § 815.6

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 36

129.   Plaintiffs reallege and incorporate the allegations set forth in the proceeding paragraphs as though fully set forth hereat.

130.   Civil Code § 815.6 provides for liability against a public entity when: (1) the entity violates an enactment; (2) the plaintiffs are in the class of persons protected by the enactment; (3) the enactment is intended to protect the type of injury complained of by the plaintiffs; (4) the violation of the enactment is the proximate cause of the injury; and, (5) the public entity did not exercise reasonable diligence in discharging its duty established by the enactment.

131.   An enactment includes a federal or state constitutional provision, a statute, charter provision, ordinance or properly adopted regulation.

132.   The Fourteenth Amendment of the United States Constitution, Article I, § 7 of the California Constitution, California Civil Code § 52.1, and California Government Code § 65583 et seq. are all enactments within the meaning of California Civil Code § 815.6.  Plaintiffs and the Plaintiff Class are in the class of persons protected by these enactments.

133.   The Housing Element drafted by the City and approved by the State points out that groups provide food, shelter, and other services but only details one such group – Mary's Kitchen. It goes on to list the wrap around services permitted at shelter – they are all items provided by Mary' Kitchen. While the day-shelter does not have traditional "beds[19]" it does provide all the shelter services to those forced to move during the night and rest during the day due to the lack of shelter in the city. The same document as submitted by the City and approved by the State goes on to

---

[19] The City contract prohibits overnight use of the property.

detail that "the city shall provide support for nonprofit entities . . .to provide a range of services and housing opportunities for the homeless persons in Orange."

134.   Despite the obligation to take all actions in compliance with the Housing Element and General Plan, the Defendant's planned actions would adversely impact the nonprofit and remove the range of services at the day shelter rather than meet the mandate to support and supplement these services.

135.   The aforementioned enactments, applied to Plaintiffs separately and together, constitute mandatory duties within the meaning of California Civil Code § 815.6 and were designed to protect against the injuries alleged herein.

136.   As described hereinabove, Defendants did not exercise reasonable diligence in discharging their duty established by the enactments identified above to refrain from violating the constitutional and statutory rights of Plaintiffs and the Class.

137.   As a direct and proximate cause of the aforementioned acts of Defendants, Plaintiffs and the Plaintiff Class suffered injuries in that they were denied access to existing facilities on grounds that were arbitrary, capricious and discriminatory, were unable to obtain appropriate housing or shelter and were threatened, cited and, in some instances arrested, for living in public places when there was no available shelter or housing.

138.   Plaintiffs and the Plaintiff Class seek injunctive and declaratory relief and damages for the individual Plaintiffs.   The damages sought by the individual Plaintiffs are incidental to the injunctive relief sought in this action.

### ELEVENTH CAUSE OF ACTION
### Violation of California Government Code § 11135 and California Government Code §65008

139.   Plaintiffs reallege and incorporate the allegations set forth in the proceeding paragraphs as though fully set forth hereat.

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 38

140.   California Government Code section 11135 provides that:

No person … shall, on the basis of race, national origin, ethnic group identification, religion, age, sex, sexual orientation, color, genetic information, or disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state.

141.   The Defendant receives public monies and financial assistance from state agencies and other state funds passed through the County.

142.   The term "disability" applies to both mental, medical and physical disabilities as defined in California Government Code section 12926.   The Defendant County, directly and through its contractors and agents, has discriminated against Plaintiffs on the basis of their disabilities and has denied them full and equal access to the programs and activities operated by the County for the benefit of unhoused persons.

143.   Under §65008 any action is void if it denies land use for enumerated reasons including "because the development or shelter is intended for occupancy by persons and families of very low, low, or moderate income." Here, the City's termination notice attempts to deny land use for simply to stop low income individuals with disabilities from occupying the property daily –other allegations are pretextual.

144. California   Code   of   Regulations   §12060,   Practices   with   a Discriminatory Effect,  makes unlawful a practice which  actually or predictably results in a disparate impact on a group of individuals, or creates, increases, reinforces, or perpetuates segregated housing patterns, based on membership in a protected class. Here, the City attempts to push people with disabilities out of its

borders because they are unable to afford housing, producing a clear and anticipated disparate impact on a protected class.

145.   As a direct and proximate result of Defendant's actions, and those of its contractors and agents, Plaintiffs and the Plaintiff Class experienced and continue to experience direct injury, including pain and suffering.

## TWELFTH CAUSE OF ACTION
## RELIGIOUS LAND USE AND INSITUTIONALIZED PERSONS ACT

146.   Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth here.

147.   RLUIPA prohibits implementing a substantial burden on the religious exercise of a person or religious assembly absent a compelling government interest pursued in the lease restrictive way possible. This includes faith-based social services, even when both religious and secular activities occur on the property.  It applies to nearly all land use and conditions on land use.

148.   Mary's Kitchen is a faith-based social service. It is operated by mostly volunteers called to serve the poor as expression of their religion. At Mary's Kitchen, guests pray before meals and engage in Bible study.

149.   Early termination of the land use agreement between Orange and Mary's Kitchen would put a substantial burden on Mary's Kitchen and impair its ability to carry out their religious mission. It would in effect bar the religious activity from this particular piece of property without giving adequate time and notice to relocate the full-service center.

**WHEREFORE, Plaintiffs pray as follows**

1.     For an order enjoining the Defendant City from cancelling the contract with Mary's Kitchen until Defendant demonstrates a full and complete alternative

for the life-saving resources offered at Mary's Kitchen. or provides an alternative location for Mary's Kitchen;

2.     For an order directing the Defendant City of Orange to refrain from all actions that would interfere with operations of Mary's Kitchen until it has an updated Housing Element approved by the California Department of Housing and Community Development that does not rely upon Mary's Kitchen;

3.     For an order directing the Defendant City of Orange to refrain from all actions that would interfere with operations of Mary's Kitchen until it has an updated its report with the United States Department of Housing and Urban Development on CDBG funding and in-kind donation so that it does not rely upon Mary's Kitchen;

4.     For a declaratory judgment that the policies, practices and conduct alleged herein violate Plaintiffs' rights under the federal and state constitutions and statutory laws governing disability and fair housing;

5.     For a declaratory judgment that Defendant failed to meet its mandatory duty to provide for homeless and low-income residents of their jurisdictions, as codified in Government Code §§65583 et seq.;

6.     For an order prohibiting Defendants from issuing any building permits, zoning exemptions, or other entitlements in commercial areas until it brings its housing policies for homeless shelters into compliance with state law; enjoining issuance of all development permits in the City unless and until compliance with the Housing Accountability Act, as amended in 2008 by SB2, is met;

7.     For damages to the individual plaintiffs in an amount to be determined according to proof based on their federal claims only;

8.     For costs of suit and attorney fees as provided by law including but not limited to Code of Civil Procedure § 1021.5, Civ. Code § 52.1(h)(i), 42 USC §1988, 42 USC § 12205;

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 41

9.     For such other relief as the Court deems just and proper.

DATED: September 9, 2021        Respectfully submitted,

ELDER LAW & DISABILITY RIGHTS CENTER

By:       /Brooke Weitzman                .
ATTORNEYS FOR PLAINTIFFS

COMPLAINT: CLASS ACTION: FRCP 23(B)(2)42 U.S.C. §1983. - 42