Brooke Weitzman SBN 301037
Benjamin Davis SBN 311409
Elder Law & Disability Rights Center
1535 E 17th Street, Suite 110
Santa Ana, CA 92705
714-617-5353
bweitzman@eldrcenter.org
bdavis@eldrcenter.org

Carol A. Sobel SBN 84483
Law Office of Carol Sobel
1158 26th Street, $552
Santa Monica, CA 90403
310-393-3055
carolsobellaw@gmail.com
Attorneys For Plaintiffs

John P. Given SBN 269787
2461 Santa Monica Blvd, #438
Santa Monica, CA 90404
310 471-8485
john@johngivenlaw.com

Paul Hoffman SBN 71244
John Washington SBN 315991
9415 Culver Bl, vd., #115
Culver City, CA 90232
Los Angeles, CA 90064
310-396-0731
hoffpaul@aol.com
jwashington@gmail.com

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MARY'S KITCHEN, RICHARD HANCOX, LISA POLLARD, HORACIO AGUILAR, TODD CHRISTOPHER, DON TERRY, STARLA ACOSTA<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF ORANGE<br><br>Defendant | CASE:  8:21-cv-01483 DOC JDE<br><br>**OPPOSITION TO MOTION TO DISMISS**<br><br>DATE:  MARCH 14, 2022<br>TIME:  8:30 A.M.<br>CTRM: 9C  HON. DAVID O. CARTER |

# TABLE OF CONTENTS

I.      INTRODUCTION                                                          1

II.     STANDARD OF REVIEW                                                    2

III.    PLAINTIFFS FIRST CAUSE OF ACTION PLEADS A
        PLAUSIBLE DUE PROCESS CLAIM                                          2

                A.      Liberty Interest                                      2

                B.      Substantive Due Process                              2

IV.     PLAINTIFFS' SECOND CAUSE OF ACTION FOR DUE
        PROCESS IS PLAUSIBLE                                                 3

V.      PLAINTIFFS' THIRD CAUSE OF ACTION FOR STATE
        CREATED DANGER IS FACIALLY PLAUSIBLE                                 3

VI.     PLAINTIFFS' FOURTH CAUSE OF ACTION – CEQA – IS
        PLAUSIBLE                                                            3

VII.    PLAINTIFFS' FIFTH CAUSE OF ACTION   PLAUSIBLY
        ALLEGES   VIOLATIONS OF THE FIRST, FOURTH,
        EIGHTH AND FOURTEENTH AMENDMENTS                                    19

VIII.   PLAINTIFFS' SIXTH CAUSE OF ACTION FOR EQUAL
        PROTECTION IS PLAUSIBLE                                             19

IX.     THE SEVENTH CAUSE OF ACTION PLAUSIBLY PLEADS
        AN ADA VIOLATION                                                    19

X.      PLAINTIFFS EIGHTH CAUSE OF ACTION PLEADS A
        PLAUSIBLE CLAIM FOR A BANE ACT VIOLATIONFS                          19

XI.     PLAINTIFFS' NINTH CAUSE OF ACTION FOR A HOUSING
        ELEMENT VIOLATION IS FACIALLY PLAUSIBLE                             19

                A.      Plaintiffs Allege Multiple Violations of the Housing
                        Element                                               2

ii

**B.**   **No Statute of Limitations Bar Applies**   **2**

**XII.**   **PLAINTIFFS TENTH CAUSE OF ACTION PLEADS A PLAUSIBLE CLAIM OF ULTRA VIRES ACTIONS BY DEFENDANT**   **19**

**XIII.**   **PLAINTIFFS ELEVENTH CAUSE OF ACTION PLEADS A PLAUSIBLE CLAIM OF DISCRIMINATORY INTENT OR IMPACT BY DEFENDANT**   **34**

**XIV.**   **CONCLUSION**   **35**

# TABLE OF AUTHORITIES

**CASES:**

Arlington Heights v. Metropolitan Housing Corp., 429 U.S. 252 (1977)          16

Ashcroft v. Iqbal, 556 U.S. 662 (2009)          2

Austin B. v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, (2007)          26

Balistreri v. Pacifica Police Dept., 901 F.2d 696 (9th Cir. 1990)          2

Bankers Life and Cas. Co. v. Crenshaw, 486 U.S. 71 (1988)          19

Barden v. City of Sacramento, 292 F.3d 1073 (9th Cir. 2002)          23

Bd. of Cty.Comm'rs,Wabaunsee Cty., Kan. v. Umbehr, 518 U.S. 668 (1996)          6

Bd. of Regents v. Roth, 408 U.S. 564 (1972)          3

Bishop v. U.S. ex rel. Holder, 962 F. Supp. 2d 1252 (N.D. Okla. 2014),
aff'd on other grounds, 760 F.3d 1070 (10th Cir. 2014)
          19

Blackburn v. Trustees of Guilford Technical Cmty. Coll.,

733 F.Supp.2d 659 (M.D. N.C.2010)          23

Butcher v. City of Marysville, 398 F. Supp. 3d 715 (E.D. Cal. 2019)          26

City of Chicago v. Morales, 527 U.S. 41 (1999)          3, 15

City of Cleburne, Tex. v. Cleburne Living Ctr. 473 U.S. 432 (1985)          18

Craft v. County of San Bernadino,  2006 U.S. Dist. LEXIS 96979,

2006 WL 4941829 (C.D. Cal. 2006)          26

Crowder v. Kitagawa, 81 F.3d 1480 (9th Cir. 1996)          23

Daniels v. Williams, 474 U.S. 327 (1986)          5

Davis v. Brady, 143 F.3d 1021 (6th Cir. 1998)          9

Deane v. Pocono Med. Ctr., 142 F.3d 138 (3d Cir. 1998)          25

Dolan v. City of Tigard, 512 U.S. 374 (1994)          6

Edwards v. California, 314 U.S. 160, 177 (1941)          22

El Morro Community Assn. v. California Dept. of Parks & Recreation,

122 Cal.App.4th 1341 (2004) 12

Fargo v. City of San Juan Bautista, 857 F.2d 638 (9th Cir. 1988) 10

Friends of the Sierra Railroad v. Tuolumne Park & Recreation Dist.,

147 Cal.App.4th 643 (2007) 12

First Step, Inc. v. City of New London, 247 F. Supp. 2d 135, 150

(D. Conn. 2003) 19

Gibson v. Warden of Washoe, Nevada, 290 F.3d 1175 (9th Cir. 2002) 10

Gilligan v. Jamco Dev. Corp., 108 F.3d 246 (9th Cir. 1997) 2

Goldberg v. Kelly, 397 U.S. 254 (1970) 5

Gremo v. Karlin, 363 F.Supp.2d 771 (E.D. PA. 2005) 10

Heller v. Doe, 509 U.S. 312, 113 S. Ct. 2637 (1993) 22

Henry A. v. Willden, 678 F.3d 991 (2012) 9

Hernandez v. City of San Jose, 897 F.3d 1125 (9th Cir. 2018) 9

Honolulu Rapid Transit Co. v. Dolim, 459 F.2d 551 (9th Cir. 1972) 6

Hurd v. Hodge, 334 U.S. 24 (1948) 1

International Longshormen's & Warehousemen's Union, Local 32 v.

Pacific Maritime Ass'n, 773 F.3d 1012 (9th Cir. 1985) 1

J.W. v. City of Tacoma, Wash. 720 F.2d 1126 (9th Cir. 1983) 22

Kennedy v. City of Ridgefield, 439 F.3d 1055 (9th Cir. 2006) 7

Knievel v. ESPN, 393 F.3d 1068 (9th Cir. 2005) 2

Koontz v. St. Johns River Water Mgmt. Dist., 570 U.S. 595 (2013) 6

Kormoczy v. Sec'y, U.S. Dep't of Housing and Urban Dev.,

53 F.3d 821 (7th Cir. 1995) 35

L.W. v. Grubbs, 92 F.3d 894 (9th Cir. 1996) 8

Las Lomas Land Co., LLC v. City of Los Angeles, 177 Cal.App.4th 837 (2009) 13

Lazy Y Ranch LTD v. Behrens, 546 F.3d 580 (9th Cir. 2008) 22

Lee v. City of San Diego, 492 F. Supp. 3d 1088 (2020) 15

1   Lowe v. City of Monrovia, 775 F.2d at 1009 (9th Cir. 1985)                    19

2   McGary v. Cit of Portland, 386 F.3d 1259 (9th Cir. 2004)                      23

3   Metro. Life Ins. Co. v. Ward, 470 U.S. 869, 875, 883 (1985)                   20

4   Mississippi University for Women v. Hogan, 458 U.S. 718 (1982)               22

5   Momox-Caselis v. Donohue, 987 F.3d 835 (9th Cir. 2021)                        7

6   Munger v. City of Glasgow Police Dep't, 227 F.3d 1082 (9th Cir. 2000)         9

7   Muzzy Ranch Co. v. Solano County Airport Land Use Com.,
8   41 Cal.4th 372 (2019)
            11, 12, 14
9   Navarro v. City of Mt. View, 2021 U.S. Dist. LEXIS 217101,

10   2021 WL 5205598 (N.D. CA 2021)                                              10

11   Nollan v. California Coastal Comm'n, 483 U.S. 825 (1987)                      6

12   Nunez v. City of San Diego, 114 F.3d 935 (9th Cir. 1997)                     17

13   Papachristou v City of Jacksonville, 405 U.S. 156 (1972)                  3, 18

14   Parks v. Watson, 716 F.2d 646 (9th Cir. 1983)                                 6

15   Perry v. Sindermann, 408 U.S. 593 (1972)                                      6

16   Payan v. Los Angeles Community College District,
17   11 F. 4th 729 (9th Cir. 2021)                                               25

18   People v. Wedlow 17 Mich. App. 134 (1969)                                    18

19   Plaintiffs Valley Housing LP v. City of Derby, 802 F. Supp. 2d 359
20   (D. Conn. 2011)

21   Plyler v. Doe 457 U.S. 202 (1982)                                            22

22   Raytheon Co. v. Hernandez, 540 U.S. 44 (2003)                               35

23   Regan v. Taxation With Representation of Wash., 461 U.S. 540 (1983)          6

24   Ressler v. Pierce, 692 F.2d 1212 (9th Cir. 1982)                             3

25   Rodde v. Bonta, 357 F.3d 988 (9th Cir. 2004)                                 1

26   Rodriguez v. Cty. of Los Angeles, 891 F.3d 776 (9th Cir. 2018)              26

27   Romer v. Evans, 517 U.S. 620 (1996)                                         22

S.Bay Senior Hous. Corp. v.City of Hawthorne, 56 Cal.App.4th 1231(1997)    34

Santa Cruz Homeless Union v.Bernal,514 F. Supp. 3d 1136 (N.D. Cal. 2021)    8

Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406 (9th Cir. 1996)    19

Sch. Bd. of Nassau Cty. v. Arline, 480 U.S. 273 (1987)    25

Schilling v. Transcor Am., LLC, 2010 U.S. Dist. LEXIS 20786

(N.D. Cal. 2010)    26

Shawn v. Golden Gate Bridge Etc. Dist., 60 Cal.App.3d 699 (1976)    11

Simi Valley Recreation & Park Dist. v LAFCO, 51 Cal.App.3d 648 (1975)    12

Steffel v. Thompson, 415 U.S. 452 (1974)    26

Strom v. United States, 641 F.3d 1051 (9th Cir. 2011)    2

Tacoma v. Luvene criminalizes 118 Wash.2d 826, 848 (1988)    17, 18

Tice v. Ctr. Area Transportation Authority, 247 F.3d 506 (3rd Cir. 2001)    25

Union of Medical Marijuana Patients, Inc. v. City of San Diego ["UMMP"],

7 Cal.5th 1171 (2019)    12, 14

U.S. v. Presley, 52 F.3d 64 (4th Cir. 1995)    19

U. S. Dep't of Agric. v. Moreno, 413 U.S. 528 (1973)    21

Vasquez v. Rackauckas, 734 F.3d 1025 (9th Cir. 2013)    16

Venegas v. Cty of Los Angeles, 32 Cal. 4th 820 (2004)    26

Water Quality Ass'n v.County of Santa Barbara, 44Cal.App.4th 732(1996)    34

Western States Petroleum Assn. v. Superior Court 9 Cal.4th 559 (1995)    13, 14

Where Do We Go Berkeley v. Calif. Dep't of Trans. (Caltrans),

2021 WL 5964594 (N.D. Cal. Dec. 16 2021)    8

Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989)    10


CONSTITUTIONAL PROVISIONS:

First Amendment, United States Constitution    1

Fourth Amendment, United States Constitution    1

Eighth Amendment, United States Constitution ........................................ 1

Fourteenth Amendment, United States Constitution ........................... *passim*

FEDERAL STATUTES AND ORDINANCES:

29 C.F.R. § 1630.2(l) ............................................................................... 25

Americans with Disabilities Act of 1990, § 201 et seq. ........................... 23

42 U.S.C.A. § 12102(2) ........................................................................... 24

42 U.S.C.A. § 12131 et seq. ..................................................................... 23

Federal Rules of Civil Procedure 12(b)(6) ................................................ 2

Rehabilitation Act of 1973 Section 504 .................................................... 25

STATE STATUTES AND CODES

California Civil Code section 52.1 ........................................................... 26

Pub. Resources Code, § 21065 ........................................................... 12, 14

Public Resources Code § 21151(c) ........................................................... 12

14 Cal. Code Regs., § 15378 ..................................................................... 12

Code Regs. Tit. 2, §12060

Cal. Govt Code, § 34852

CITY OF ORANGE MUNICIPAL CODE

City of Orange Municipal Code

Mun. Code, § 2.16.020

Mun. Code, § 2.16.030

§17.13.030 (JJ)(4)(c)(i) .............................................................................. 1

## I.    INTRODUCTION

Defendant City seeks to dismiss this action in its entirety despite plausible allegations in the Amended Complaint.  Contrary to the City's claim, this is not a simple land-use contract with a "no-cause" termination clause.  It is a conscious push to evict the only provider for hundreds of unhoused adults the City views as increasingly persons with mental illness.

The contract cannot trump Plaintiffs' constitutional and statutory rights.  "The power of the federal courts to enforce … private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in the Constitution, treaties, federal statutes, and applicable legal precedents. Where the enforcement of private agreements would be violative of that policy, it is the obligation of courts to refrain from such exertions of judicial power." *Hurd v. Hodge*, 334 U.S. 24, 34–35 (1948) (racially restrictive covenants). *See also Int'l Longshormen's & Warehousemen's Union, Local 32 v. Pac. Maritime Ass'n*, 773 F.2d 1012, 1020–21 (9th Cir. 1985) (power of federal courts to enforce private agreements is subject to restrictions and limitations set by public policy of the United States in federal statutes.)

The use of City property these past decades was a benefit to Plaintiffs, no matter if called a lease, license, contract or otherwise. It may not be ended for an unconstitutional reason, no matter what the contract provides, especially for benefits affecting a vulnerable group. In *Rodde v. Bonta*, 357 F.3d 988 (9th Cir. 2004), Los Angeles County was blocked from closing a rehabilitation center without providing like facilities for necessary medical and rehabilitative services. *Id.* at 991–94, 999–1000. *Bonta* supports the plausibility of Plaintiffs' allegations.

Plaintiffs address the arguments in the order that the Causes of Action are set out in the operational pleading.

1

## II.    STANDARD OF REVIEW

Federal Rules of Civil Procedure 12(b)(6) requires the Court to review the legal sufficiency of Plaintiffs' claims in the complaint. *Strom v. United States*, 641 F.3d 1051, 1067 (9th Cir. 2011). Dismissal is proper under Rule 12(b)(6) only when the complaint either fails to allege a "cognizable legal theory" or to allege sufficient facts "to support a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  The court does not decide if Plaintiffs will prevail eventually; rather, whether they may engage in discovery to support their claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

To defeat a Rule 12(b)(6) motion, a complaint must allege  enough "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff must plead facts "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All material factual allegations in the complaint are accepted as true, *Twombly*, 550 U.S. at 556, but not "a legal conclusion couched as a factual allegation." *Id.* at 555.  A court generally may not consider material outside of the complaint.  *Amfac Mortg. Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426, 430 (9th Cir. 1978) ("Unless th[e] evidentiary matter was incorporated in the plaintiff's complaint, it [can]not usually be considered by the court on a motion to dismiss for failure to state a claim").

The City attempts to introduce a myriad of "facts" to counter Plaintiffs' allegations,[1] many which are directly refuted by the First Amended Complaint

---

[1] Plaintiffs filed a separate Opposition to Defendant's Request for Judicial Notice.

2

(FAC), including whether the City Manager was authorized to end the agreement. No matter how viewed by the Court at the preliminary injunction, the City Manager's actions and the Council's failed post hoc attempt to ratify these unauthorized acts are disputed questions of fact regarding illicit motive.

## III.   PLAINTIFFS FIRST CAUSE OF ACTION PLEADS A PLAUSIBLE DUE PROCESS CLAIM

### A.  Liberty Interest

Time and again, the Supreme Court has affirmed the right to "loiter" for an innocent purpose in public, a right inherent in the 14th Amendment "liberty" interest. Fifty years ago, the Court affirmed this right, striking "loitering" laws criminalizing homelessness. *Papachristou v City of Jacksonville*, 405 U.S. 156, 164 (1972) ("these activities are historically part of the amenities of life as we have known them."); *City of Chicago v. Morales*, 527 U.S. 41 (1999) (striking anti-gang measure criminalizing suspected gang members "loitering" on public sidewalks).

The FAC alleges the Plaintiff class was threatened with enforcement of anti-loitering laws [FAC pp. 9-10], that the City demanded Mary's Kitchen enforce anti-loitering laws as a condition of operation, and failure to do so was a factor in the termination. FAC pp. 10,36.   The City does not dispute Plaintiffs plead this claim. Instead, it urges the Court apply the preliminary injunction test. MTD at 23.  Instead, Defendant argues, since it has the absolute right to evict Mary's Kitchen for any reason at any time, it cannot possibly be liable for the impact of that action -- or any other actions it takes.  The cases striking similar laws criminalizing innocent conduct in a public forum foreclose this argument. *See* Sec. VIII, *infra*.

### B. Substantive Due Process

Plaintiffs sufficiently pled property interests. Mary's Kitchen has an interest based on the lease benefit from Defendant.  The Plaintiff Class has an interest based

3

on the access to a day-shelter and all its services. These constitutional "property" interests outweigh Defendant's land use "property" interest.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Ressler v. Pierce*, 692 F.2d 1212, 1214-1215 (9th Cir. 1982). Mary's Kitchen relied on the City's public statements made as recently as 2019 that it provided exemplary and important services, when the contract was renewed and each time the City needed to use them to prove to the government that it provided services to at-risk groups, including seniors, extremely low-income persons, disabled and unhoused persons.

Due process is "intended to secure the individual from the arbitrary exercise of the powers of government," *Daniels v. Williams*, 474 U.S. 327, 331 (1986). The FAC alleges assurance given, detrimental reliance, reasonable belief that the City promised this benefit for at least three more years and that Mary's Kitchen had exclusive use of the property. FAC p. 2,4,9. There is a dispute about the contract and the impact of statutory and constitutional law. If a motion to dismiss could prevail by one side pointing to a disputed term in a contract as dispositive despite allegations in the complaint, no contract dispute would ever make it past pleading.

The Class received a constitutionally protected benefit, a property interest, similar to welfare protections that secure an interest protected by due process. *See e.g., Goldberg v. Kelly*, 397 U.S. 254, 261 (1970) ("due process requires an adequate hearing before termination of welfare benefits"). When, as alleged, the impending loss is a direct result of City action without due process or a plan to ensure continued benefits to unhoused persons in the City, the Motion fails.

4

# IV. PLAINTIFFS' SECOND CAUSE OF ACTION FOR DUE PROCESS IS PLAUSIBLE

"[T]he government may not deny a benefit to a person because he [or she] exercises a constitutional right." *Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 545 (1983); *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 612 (2013). This is true "even though a person has no 'right' to a valuable governmental benefit[,]" and "even though the government may [otherwise] deny the benefit at its discretion." *Parks v. Watson*, 716 F.2d 646, 650 (9th Cir. 1983) (internal quotation marks omitted). The doctrine of unconstitutional conditions forbids the government from "impos[ing] a choice between [a] government benefit and the exercise of a constitutionally guaranteed right." *Id.*

Over more than a century, this principle has been applied broadly and repeatedly by the Supreme Court. See e.g., *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987) (rebuilding permits); *Dolan v. City of Tigard*, 512 U.S. 374 (1994) (land use permits); *Perry v. Sindermann*, 408 U.S. 593 (1972) (government employment), *Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668 (1996) (city trash disposal contract); *Regan v. Tax'n With Representation of Washington*, 461 U.S. 540 (1983) (government subsidies).

Here, the City of Orange provided a benefit to Mary's Kitchen by providing a lease for City property for a day facility serving unhoused persons. This arrangement is no different than the contractual benefit for trash hauling secured by the petitioner in *Umbehr*. 518 U.S. at 671. The unconstitutional conditions doctrine is violated when a constitutional right is infringed upon in exchange for the government benefit. *Honolulu Rapid Transit Co. v. Dolim*, 459 F.2d 551, 553 (9th Cir. 1972). "A predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered… what it attempted to pressure

5

that person into doing" by conditioning the benefit. *Koontz*, *supra*, 570 U.S. at 612. In other words, the government may not do indirectly what it cannot do directly.

The allegations of the FAC state a plausible claim that the City conditioned continuance of the agreement on Plaintiff's concession to demands to restrict mentally ill clients from assisting during the pandemic, requiring Plaintiff to "police" the public sidewalk outside its facility, and admitting law enforcement inside to question its guests. FAC pp. 2,4,9. The City may not lawfully restrict homeless persons presence on public sidewalks. By making these demands, the City imposed conditions that violates the Fourteenth Amendment's provision of Equal Protection and the doctrine of unconstitutional conditions.

## V. PLAINTIFFS' THIRD CAUSE OF ACTION FOR STATE CREATED DANGER IS FACIALLY PLAUSIBLE

Conduct by a state actor that "affirmatively place[s] an individual in danger by acting with deliberate indifference to [a] known or obvious danger" is a substantive due process violation. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006) (internal citations omitted). *See also Momox-Caselis v. Donohue*, 987 F.3d 835, 845 (9th Cir. 2021). Plaintiff must show "(1) …an objectively substantial risk of harm; (2) the [state] was subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed; and (3) the [state] either actually drew that inference or a reasonable official would have been compelled to draw that inference. *Id.* at 845.

The FAC details the threat to the health and safety of hundreds of unhoused persons left without critical resources -- loss of medical services and medication, hygiene, food and water -- and the increase in deaths to this population in the Defendant City when Mary's Kitchen offered reduced services in the early days of the Covid pandemic. FAC pp. 7-8 (¶15; pp. 37-38). Defendant created the "danger"

6

Plaintiffs now face, imposing a duty to act "when the state The government has a duty to act when "the state official participated in creating a dangerous condition, and acted with deliberate indifference to the known or obvious danger in subjecting the plaintiff to it.'" *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996). The FAC alleges a plausible claim of imminent harm to the Plaintiff class and the City's knowledge of and deliberate indifference to this very real danger. *See e.g.,* FAC pp. 37-38. *See Santa Cruz Homeless Union v. Bernal*, 514 F. Supp. 3d 1136, 1144 (N.D. Cal. 2021). "[I]f Defendant [is] moving forward with the closure of [Mary's Kitchen] with knowledge that available [ ] options may not be viable and without sufficient attempt to address alternatives, … a reasonable jury might well find Defendants to be deliberately indifferent." *Where Do We Go Berkeley v. California Dep't of Transportation (Caltrans),* 2021 WL 5964594 (N.D. Cal. Dec. 16 2021).

The City argues that since it did not create Covid or extreme temperatures, its decision to abruptly evict the only resource for unhoused single adults in the City could not be a state-created danger. MTD P15. This is akin to saying that because officers impound a vehicle and leave passengers on the side of the road in the night during a severe weather event, the City cannot be liable if they die since the City did not cause or control the weather, even though officers knew about the risk when they left the vehicle's passengers in this situation. This rationale was rejected in *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086-87 (9th Cir. 2000) (drunk bar patron died of hypothermia after officers ordered him to leave a bar and would not let him drive his vehicle on a severely cold night in Montana. He was found dead the next morning in a nearby alleyway.) *Id.* at 1084-84. *See also, Davis v. Brady*, 143 F.3d 1021 (6th Cir. 1998) (triable issue in § 1983 action where plaintiff was arrested for intoxication, released outside city limits in a 55-mile-per-hour speed zone with no sidewalks, hit by a car and permanently injured.)

7

1    "[T]he point of the state-created danger doctrine is that the affirmative actions
2    of a state official created or exposed an individual to danger *which he or she would*
3    *not have otherwise faced.*"  *Henry A. v. Willden*, 678 F.3d 991,1002-03 (2012)
4    (internal quotation marks and citation omitted) (emphasis in original); *see also,*
5    *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018).  The issue is
6    "whether the [State] left the person in a situation that was more dangerous than the
7    one in which they found [Plaintiffs]. *Munger*, 227 F.3d at 1086.

8         Without any law to support its contention, the City asserts that because the
9    harm Plaintiffs allege happens to many people – a "segment of the public" – and not
10   just one person, the City is somehow shielded from the state created danger doctrine.
11   MTD at 17.  The State Created Danger doctrine applies to an impacted class so long
12   as the class is definable and not the general public. *Navarro v. City of Mt. View*, 2021
13   U.S. Dist. LEXIS 217101, *16, 2021 WL 5205598 (N.D. CA 2021).  Here, Plaintiffs
14   do not allege harm to the general public.  The Complaint limits the class to those
15   who rely upon Mary's Kitchen for essential services.  Even though the City may not
16   have direct contact with each or any member of the class other than through the
17   police, all that is required is that there is "some contact such that the plaintiff[s were]
18   foreseeable victim[s] of the defendant's acts in a tort sense."  *Gremo v. Karlin*, 363
19   F.Supp.2d 771, 789 (E.D. PA. 2005) (only "some relationship"). Plaintiffs allege
20   that the City's agents were in and around Mary's Kitchen regularly, questioned
21   guests, and ran them for wants and warrants. FAC pp. 4, 8, 10, 14-15. The City knew
22   that the guests of Mary's Kitchen were receiving critical services for survival and,
23   in fact, promoted that fact to evince compliance with state and federal regulations
24   applicable to unhoused persons.  FAC p. 2.  It is too late in the day for the City to
25   say they did not know.

26
27
                                        8

Finally, the City states Plaintiffs cannot show deliberate indifference.  This is a classic issue for a fact finder and dismissal for failure to provide such evidence at this point is improper. *Gibson v. Warden of Washoe, Nevada*, 290 F.3d 1175, 1194-95 (9th Cir. 2002) (overruled on other grounds); *Wood v. Ostrander,* 879 F.2d 583, 588 n. 4 (9th Cir. 1989) ("jury presented with these facts might find conduct … deliberately indifferent, reckless, grossly negligent, or merely negligent" (internal quote marks omitted)); *Fargo v. City of San Juan Bautista,* 857 F.2d 638, 641 (9th Cir. 1988) ("When reasonable persons may disagree as to whether particular conduct constitutes negligence, gross negligence or recklessness, the question is one of fact to be decided by a jury").  The FAC alleges a plausible claim on this count.

## VI.    PLAINTIFFS' FOURTH CAUSE OF ACTION – CEQA – IS PLAUSIBLE

To survive a motion to dismiss under the California Environmental Quality Act (CEQA), Plaintiffs' burden is to sufficiently plead facts in their complaint alleging the City's action is subject to the Act and the City failed to comply with the Act's minimum requirements. Here, accepting the facts as alleged in the FAC as true, as the Court must, Plaintiffs easily meet this burden.

A reviewing court determines agency compliance with CEQA by examining the administrative record for a prejudicial abuse of discretion. *Muzzy Ranch Co. v. Solano County Airport Land Use Com.,* 41 Cal.4th 372, 381 (2019). In a Motion to Dismiss, the Court reviews the record for the determinations the City is required to make under CEQA's and the CEQA Guidelines' three-tiered structure. *Shawn v. Golden Gate Bridge Etc. Dist.*, 60 Cal.App.3d 699, 700-701 (1976).[2] The three-

---

[2] Although *Shawn* involved a state court demurrer to a Complaint, the inquiry is the same as the Court must engage in here.

9

tiered process was established "to ensure that public agencies inform their decisions with environmental considerations." *Muzzy Ranch*, 41 Cal.4th at 380. The first tier requires public agencies to consider whether their discretionary actions constitute a "project." *Id*. If, after review under the first tier, the action is determined to be a "project," the second tier allows an agency to consider whether the action may nonetheless be exempt from review under an enumerated statutory or categorical exemption. *Muzzy Ranch*, 41 Cal.4th at 380.

A "project" is "the whole of an action [with] a potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment." Pub. Resources Code, § 21065; see also 14 Cal. Code Regs., § 15378 ["CEQA Guidelines"]. An agency's review covers "the potential environmental effects of undertaking the type of activity proposed, without regard to whether the activity will actually have environmental impact." *Union of Medical Marijuana Patients, Inc. v. City of San Diego* ["UMMP"], 7 Cal.5th 1171, 1197 (2019); *Muzzy Ranch*, supra, 41 Cal.4th at p. 381 [internal quotation marks omitted]. CEQA is construed broadly and projects include "many activities not related to land development that involve some other environmental impact." *Friends of the Sierra Railroad v. Tuolumne Park & Recreation Dist*., 147 Cal.App.4th 643, 654 (2007). Government action is a "project" when a public agency has "some minimal link with the activity, either by direct proprietary interest or by permitting, *regulating*, or funding private activity." *Simi Valley Recreation & Park Dist. v. LAFCO*, 51 Cal.App.3d 648, 664 (1975) (emphasis added). When an unelected official decides an action is either not a project or is exempt from review, Public Resources Code § 21151(c) mandates the an appeal be allowed of the decision to the agency's elected decision-making body. *El Morro Comm. Assn. v. Calif. Dept. of Parks & Rec.,* 122 Cal.App.4th 1341, 1350 (2004).

10

Plaintiffs' FAC alleges that the City failed to assess its discretionary decision to revoke Plaintiff's lease for possible environmental effects. FAC p.38, ¶ 128. Assuming the non-elected City Manager made the required inquiry, the City failed to provide notice to the public of a CEQA exemption either because it was not a project or was categorically exempt and failed to allow appeal of the non-elected decisionmaker's determinations to the City's elected body.[3]  *Id.*, ¶¶ 127-128. The FAC also describes a legally cognizable indirect environmental impact likely to result from the City's action. *Id.*, ¶ 131.

Defendant City contends its discretionary action "is simply not a 'project'." MTD, 37:8-9. City's conclusion is unsupported by analysis based on undisputed facts in the record, and to the extent the motion analyzes CEQA at all, it conflates the tier-one required analysis (whether the action is a project) with the tier-two required analysis (whether if the action is a project it is exempt.)

The sole case cited by the City is inapposite. In *Las Lomas Land Co., LLC v. City of Los Angeles*, 177 Cal.App.4th 837 (2009), a developer allegedly spent millions of dollars on a draft environmental impact report for its proposed 555-acre development project before the project was rejected by the City of LA. The developer petitioned for a writ of mandate, arguing the City had a mandatory duty under CEQA to complete the environmental review before it could reject the project. *Id.* at 842-47.  The courts upheld the City's demurrer because CEQA does not apply

---

[3] No admissible evidence shows any CEQA determinations made before taking action, only inadmissible extra-record evidence and post hoc claims that it does not apply. *Western States Petroleum Assn. v. Superior Court* 9 Cal.4th 559, 576 (1995).

to a project that an agency rejects. *Id*. at 848. Whether the development constituted a project if it had been approved was not at issue in the case.

Here, the public agency's activity is the termination of a lease. The City of Orange has provided no evidence that it ever considered the tier-one question before it acted. Its motion provides no statutory or case authority that *termination* of a lease is necessarily not a project. But it is undisputed that the action was discretionary and undertaken directly by the City of Orange, which is sufficient.  FAC pp. 37-38 (see Public Resources Code, § 21065(a).)[4]  The FAC also alleges the action will likely have an indirect impact on the environment. FAC, ¶ 131.  Under *UMMP*, *Muzzy Ranch*, and *Simi Valley Recreation & Park District*, the City's action is a project.

The City further contends that even if the action is a project it "would be exempt under numerous exemptions."[5] MTD, 36:8-10. But the Court cannot assume that a categorical exemption applies. The burden is on the City to provide substantial evidence in support of its factual findings that an exemption applies, including the so-called "common sense" exemption of CEQA Guidelines § 15061(b)(3). *Muzzy Ranch*, 41 Cal.4th at 385-6. The motion to dismiss presents hypothetical arguments, but no evidence, let alone the required substantial evidence, to support that *any* exemption applies. Extra-record evidence is generally inadmissible in judicial

---

[4] The City argues that *termination* does not appear within Public Resources Code §21065(c), so its lease termination cannot be a project. MTD, 37:26-27. Defendant ignores the many cases holding that CEQA is interpreted broadly to provide maximum environmental protection. *See, e.g.*, *Union of Medical Marijuana Patients, Inc. v. City of San Diego,* 7 Cal.5th 1171, 1184 (2019).

[5] City does not contend its action is ministerial and stated it does not rely on this exemption. (Def. Brief Re Applicability of CEQA, dkt. 55, 7:3-5.)

12

1  review of CEQA decisions. *Western States Petroleum Assn. v. Superior Court,* 9

2  Cal.4th 559, 571(1995).

3      Finally, the City fails to dispute the contention that the City denied Plaintiffs

4  an opportunity to appeal the unelected City Manager's CEQA determinations,

5  assuming any were ever made to the City's elected decision-making body under

6  Public Resources Code § 21151(c). FAC pp. 38-39 [¶¶ 127-131]. This alone

7  constitutes a prejudicial abuse of discretion and, therefore, a CEQA violation.

8      Plaintiffs' Complaint need only allege that the City action is a "project" under

9  CEQA, and that it failed to comply with minimum standards for both procedure and

10 consideration of possible environmental impact. Here, accepting the facts pled in the

11 FAC as true, Plaintiffs more than met this burden. While the City tries to mix issues

12 by alleging its own facts, that is not allowed in this motion.

13     At this stage, the Court must take the allegations in the FAC as true. The FAC

14 alleges the action is a discretionary action is a CEQA "project" that is not exempt

15 from review. Under California law, the administrative record is required to consider

16 both whether the action is a project and whether it may be exempt. Therefore, the

17 CEQA claim is sufficiently pled to withstand a motion to dismiss.

## VII.  PLAINTIFFS'   FIFTH   CAUSE   OF   ACTION PLAUSIBLY ALLEGES   VIOLATIONS OF THE FIRST, FOURTH, EIGHTH AND FOURTEENTH AMENDMENTS

21     The Orange Municipal Code criminalizes loitering in a quintessential public

22 forum based on its proximity to a homeless shelter.  Orange Municipal Code (OMC)

23 17.13.030 (JJ)(4)(c)(i).  This law violates the right to free movement as it expressly

24 prohibits persons from congregating, loitering, or queueing "in the public right-of-

25 way outside the facility at any time."  *Id.*  Loitering for "harmless and innocent"

26 purposes is "part of the 'liberty' protected by the Due Process Clause of the

27

1    Fourteenth Amendment." *City of Chicago v. Morales*, 527 U.S. 41, 53 (1999); *Lee*

2    *v. City of San Diego*, 492 F. Supp. 3d 1088, 1116 (2020) (striking law that

3    criminalized standing on a sidewalk because it was not directed with specificity

4    toward the prohibited conduct of blocking sidewalks). an individual's decision to

5    remain in a public place of his choice." *Morales*, 527, U.S. at 54.  *See* also, *Vasquez*

6    *v. Rackauckas*, 734 F.3d 1025 (9th Cir. 2013) (quoting *Morales*, 527 U.S. at 54).

7    *Vasquez* held that an order prohibiting juvenile plaintiffs from "'stand[ing], sit[ting],

8    walk[ing], driv[ing], bicycl[ing],' or 'gather[ing] or appear[ing]'" in public to

9    address suspected gang activity directly interfered with the fundamental right of free

10   movement, and the "'decision to remain in a public place of his choice.'"  *Id.* at

11   1042 (internal quotations omitted).

12         Defendant concedes the City's police question Plaintiffs while they wait in a

13   quintessential public forum to receive essential services.  MTD 42:18. The City

14   contends that precluding loitering can be constitutional. MTD 42:20-28, 43:1-12.

15   That is certainly not the case where, as here, there is no necessity that the person has

16   an unlawful purpose.  Such purpose is created by the City based solely on the

17   proximity to a shelter facility.  "A city is free to enact ordinances preventing 'people

18   from ... engaging in ...  forms of antisocial conduct,' … [but] . . . the ordinances must

19   be 'directed with reasonable specificity toward the conduct to be prohibited.'" *Lee*

20   *v. City of San Diego*, 492 F. Supp. 3d 1088, 1116 (S.D. Cal. 2020) (quoting *Coates*

21   *v. City of Cincinnati*, 402 U.S. 611 (1971)). The *Lee* court held that a law

22   criminalizing standing on the sidewalk without specifying the conduct the law was

23   meant to prohibit was unconstitutionally vague. *Id*.  Here, the law prohibits shelter

24   clients from "congregat[ing], loiter[ing], or queu[ing] in the public right-of-way

25   outside of the facility at any time." OMC17.13.030 (JJ)(4)(c)(i). The Code

26   criminalizes simply standing on the public sidewalk, core protected conduct.

27                                          14

The laws in the cases cited by the City were upheld because they (1) specified prohibited conduct, (2) established enforceable standards, and (3) intended to prevent loitering for criminal conduct such as the prevention of drug-related offenses or lewd acts. *City of Tacoma v. Luvene* criminalizes loitering for the purpose of "intentionally soliciting, enticing, inducing, or procuring another person to exchange, sell, buy, or use illegal drugs or drug paraphernalia." 118 Wash.2d 826, 848 (1988). The Tacoma law prohibits loitering with the "intent and overt act" of selling illegal drugs. *Id*. at 847, 849-50. This "intent and overt act" requirement ensures that the police action "is directed toward . . . overt actions[,]" and is not "inherently subjective" or subject to an officer's "personal whim or fancy." *Id*. at 847. *People v. Superior Court* also provides no support for Defendant's argument as it penalizes loitering for the "purpose of engaging in or soliciting lewd acts." 46 Cal. 3d 381, 394-95 (1988).  Finally, the OMC is not "essentially identical" to the law in *People v. Wedlow*, where a state appeals court upheld a Detroit ordinance prohibiting loitering on "any street, sidewalk, overpass or public place. [The ordinance defines loitering] as the act of standing or idling . . . so as to hinder or impede . . . the passage of pedestrians or vehicles." 17 Mich. App. 134, 136 (1969). Even if it were essentially identical, *Wedlow* predates the Supreme Court's decision in *Papachristou*, 405 U.S. 156.

Defendant cites no case to refute Plaintiffs' claim that the loitering law is unconstitutionally vague as it vests police with unbridled discretion to curtail fundamental liberty to be and stay in a public forum.  Even if the City could show some lawful applications of the ordinance, it would not matter. "In a facial vagueness challenge, the ordinance need not be vague in all applications if it reaches a substantial amount of constitutionally protected conduct." *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th Cir. 1997) (internal quotation omitted).

Because the OMC restricts a "substantial amount of constitutionally protected conduct," the motion to dismiss on this basis must be denied.

## VIII.   PLAINTIFFS' SIXTH CAUSE OF ACTION FOR EQUAL PROTECTION IS PLAUSIBLE

Defendant argues that Plaintiffs fail to state an Equal Protection claim because (1) there is no specific conduct or violation alleged to be a denial of equal protection; (2) no similarly situated person who was treated differently is alleged; (3) homelessness and disability are not protected classes; and (4) at best, the claim would fail under rational basis review.  As discussed below, *City of Cleburne, Tex. v. Cleburne Living Ctr*. 473 U.S. 432, (1985) puts these arguments to rest.

First, Plaintiffs specifically allege that they were subjected to selective and discriminatory application of the laws and programs based on their class attributes. The City's Notice of Closure on September 18, 2021 issued quickly after Mary's Kitchen asked to discuss opening a navigation center.  The City's only response was to express concern over the increase in people with disabilities, especially mental illness, at Mary's Kitchen. If true, this violate the equal protection clause. FAC p.4.

When a facially neutral policy or action is challenged as an equal protection violation, the Court analyzes whether the defendant's actions were motivated by a discriminatory purpose by examining (1) statistics showing a "clear pattern unexplainable on grounds other than" discriminatory ones, (2) "[t]he historical background of the decision," (3) "[t]he specific sequence of events leading up to the challenged decision," (4) the defendant's departures from its normal procedures or substantive conclusions, and (5) relevant "legislative or administrative history." *Arlington Heights v. Metropolitan Housing Corp*., 429 U.S. 252, 266-68 (1977). The factors are non-exhaustive.  A plaintiff may choose to rely on the *Arlington Heights* factors to demonstrate discriminatory intent through direct or circumstantial

16

evidence.  In that circumstance, the plaintiff need provide "very little such evidence ... to raise a genuine issue of fact ...; any indication of discriminatory motive ... may suffice to raise a question that can only be resolved by a fact-finder." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996) (quoting *Lowe v. City of Monrovia,* 775 F.2d at 1009 (9th Cir. 1985)).

Under the facts alleged, Plaintiffs have more than enough evidence to show the City's discriminatory motives include disability when it moved first to regulate, then to close, Mary's Kitchen FAC p.4. The Complaint chronicles the City's expressed concern over the increased number of homeless persons with mental illness visiting Mary's Kitchen and the brief time between the City's statement of these concerns and its abrupt and unauthorized notice of closure from the City Manager; the requirement that guests of Mary's Kitchen with mental illness not be allowed to volunteer; and the increased enforcement of criminalization against the guests of the Kitchen, including unconstitutional anti-loitering laws. These are only a few facts to meet a threshold of discriminatory motive under *Arlington Heights*.

Even under a rational basis analysis, the City's Motion to Dismiss fails.  Each of Defendant's reasonings is based on stereotypical and irrational grounds. Arbitrary and irrational discrimination violates the Equal Protection Clause even under the most deferential standard of review. *Bankers Life and Cas. Co. v. Crenshaw*, 486 U.S. 71, 83 (1988); *U.S. v. Presley*, 52 F.3d 64, 68 (4th Cir. 1995).

Even if, as Defendant argues, it had "many" reasons for closing Mary's Kitchen and that each must be shown as irrational, that only reinforces the unavoidable factual inquiry and the impropriety of dismissal at this stage before any discovery has occurred.   Plaintiffs allege that the reasons now proffered by Defendant in defense of its actions are merely pretextual to cover its discriminatory motives.  FAC ¶ 25-27, 32-3.  This is a plausible claim on its face.  *See Plaintiffs*

17

*Valley Housing LP v. City of Derby*, 802 F. Supp. 2d 359, 373-374 (D. Conn. 2011) (city's proffered reasons for blocking supportive housing for persons with disabilities was pretext for discriminatory decision-making under ADA); *First Step, Inc. v. City of New London*, 247 F. Supp. 2d 135, 150 (D. Conn. 2003), (nonprofit serving mentally ill clients established a prima facie claim that a city zoning commission denial of a special use permit for the nonprofit based on purported parking concerns was a pretext for disability discrimination in violation of ADA).

There is a difference between a "suspect" class – race, gender, ethnicity – and a "protected" class. Disability became a protected class by the Rehabilitation Act of 1973 for federal government employees. In 2008, the ADA was amended to add virtually all Americans with disabilities as a protected class. Defendant's argument significantly diminishes the level of scrutiny Courts require for cases involving government actions against those with mental illness, disabilities and other vulnerable conditions. In such circumstances, Courts have regularly applied a higher level of rational revAmiew, sometimes called "rationality with a bite" or "non-deferential rational basis review."

Under this standard, the burden is on the Defendant to justify its actions. See, e.g., *Cleburne Living Ctr*. 473 U.S. at 448. Government officials responsible for the conduct bear the burden to prove they had some legitimate interest in mind and that the classification actually furthers that interest. *Metro. Life Ins. Co. v. Ward*, 470 U.S. 869, 875, 883 (1985). There are three factors considered in deciding whether to require a heightened rationality review in a given case: (1) the invidiousness of the classification, (2) the importance of the interest adversely affected and (3) the nature of the government's purpose. *U. S. Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973). This case meets all three factors.

First, in *Cleburne Living Ctr*., the Supreme Court ruled that, under the rational basis test, an ordinance affecting those with mental disabilities was unconstitutional under equal protection based on the "irrational prejudice against the mentally retarded." 473 U.S. 432, 435. "[T}here will continue to be instances of discrimination against the retarded that are in fact invidious." *Id*. at 446.  The FAC alleges Defendant's complaint of an increasing number of persons with mental disabilities, in particular, as guests and employees of the Kitchen.  FAC ¶¶ 27, 32-3.

Second, in *United States Dept. of Agriculture v. Moreno*, the Court used "rationality with a bite" to assess the essential nature of the interest and strike down a government classification blocking food stamps. 413 U.S. 528, 535 (1973). The interest is not only the basic need of food but also the nature of association and community of poor persons. As in *Moreno*, "[t]his case involves desperately poor people with acute problems who, though unrelated, come together for mutual help and assistance. The choice of one's associates for social, political, race, or religious purposes is basic in our constitutional scheme." *Id*. at 541.  The Kitchen is a vital source of food, showers, rest, medical care and community for this disabled and unhoused population. FAC ¶¶ 5-6.  These interests not met elsewhere in the City.

Third, *Moreno* held that the nature of the government's purpose in restricting food stamps was not rational, in part, because it was based on hostilities towards "hippies" and "hippie communes," a government interest that the Court found improper. 413 U.S. at 534. "[A] bare ... desire to harm a politically unpopular group" was not a legitimate state interest and was unconstitutional. Id. at 535. The City's closure of Mary's Kitchen is based, in part, on hostility to homeless and/or disabled persons.  Unlike hippies, this class is both politically unpopular and a protected class.

In *Plyler v. Doe*, the Supreme Court applied heightened scrutiny to a group that was not a suspect class and did not have any fundamental rights impinged upon

19

but still had some characteristics of a suspect class and suffered impact to a non-fundamental, but still important right. 457 U.S. 202, 216–18 (1982). *Plyler* emphasized a core observation equally important here. "Some classifications are more likely than others to reflect deep-seated prejudice rather than legislative rationality in pursuit of some legitimate objective. Legislation predicated on such prejudice is easily recognized as incompatible with the constitutional understanding that each person is to be judged individually and is entitled to equal justice under the law." *Id*. at 2394 n.19.

The plausibility of Plaintiffs' claims is also evinced by the decision in *J.W. v. City of Tacoma, Wash*., challenging the denial of a special permit required for group homes housing former mental patients. 720 F.2d 1126 (9th Cir. 1983). The Court found that the ordinance conflated dangerousness and public nuisance with mental illness and that "constitutional concerns are heightened, because the individual permit application decision may rest upon inaccurate and stereotypic fears about the group." *Id*. at 1131 n.6. Although the rehabilitation services and access to housing provided by the group home were not categorized as fundamental rights, the Court, nonetheless, found them "'essential to individuals' full participation into society." *Id*. at 1130 (internal citation omitted).

There can be no serious dispute that Mary's Kitchen provides essential services for similarly challenged individuals and that Defendant has expressed similarly inaccurate and stereotypic fears about the Plaintiff class, including that Mary's Kitchen is "enabling homelessness" by providing these services. FAC ¶ 32. More than 80 years ago, the Supreme Court held that no one can seriously contend that a person without funds and without a job constitutes a "moral pestilence." *Edwards v. California*, 314 U.S. 160, 177 (1941). The City's rationale mirrors the those rejected by *Edwards* and other cases involving similarly marginalized groups.

20

The Supreme Court has cautioned that "even the standard of rationality ... must find some footing in the realities of the subject addressed by the legislation." *Heller v. Doe*, 509 U.S. 312, 113 S. Ct. 2637, 321 (1993). See, e.g., *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580 (9th Cir. 2008) (under rational basis review, an administrative costs rationale did not defeat Plaintiffs claim as it was based more in bias than in reality). See also *Mississippi University for Women v. Hogan*, 458 U.S. 718, 102 S. Ct. 3331, 3336-40 (1982) (law creating single-sex nursing school invalid based on "stereotyped view of nursing as an exclusively women's job").

Even if the City advances a conceivably valid interest, the government classification must still be appropriate for furthering that interest.  These are factual questions, considering bias, stereotypes and the impact and balance of the actions and harm towards the Plaintiffs.  In *Romer v. Evans*, 517 U.S. 620 (1996), the Supreme Court applied a rational basis standard and concluded that legislation targeted at LGBTQ+ persons "inflicts on them immediate, continuing, and real injuries that outrun and belie any legitimate justifications that may be claimed for it." *Id.* at 632.  The same result is plausible here: targeting persons with mental illness as a basis to evict Mary's Kitchen will "inflict[] on them immediate, continuing and real injuries," including increased health risks and death, that far outweigh any "legitimate justifications" the City sets out as a reason for its decision.

## IX.     THE SEVENTH CAUSE OF ACTION PLAUSIBLY PLEADS AN  ADA VIOLATION
### A.     Plaintiffs Adequately Allege A Plausible Disability Claim

State action that disproportionally burdens disabled persons because of their unique needs is actionable under the ADA Title II, barring discrimination in public services and programs. Americans with Disabilities Act of 1990, § 201 et seq., 42 U.S.C.A. § 12131 et seq.  Each named Plaintiff is alleged to be a person with a mental or physical disability within the meaning of 42 U.S.C.A. § 12131 et seq.

21

Plaintiffs' claim that the City's enforcement against Mary's Kitchen's guests, as well as the closure of Mary's Kitchen, disproportionately harms and excludes people with disabilities.  Plaintiffs are not required to show a comparative class of persons that was treated more favorably.  *See e.g., Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996). The ADA sets a national mandate on the treatment of persons with disabilities (42 U.S.C.A. § 12101(b)(1)) and "bring[s] within its scope anything a public entity does."  *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) (internal citations omitted).  This includes enforcement of local laws. *McGary v. Cit of Portland*, 386 F.3d 1259, 1268-69 (9th Cir. 2004).

Defendant's claim that there are not enough facts to establish an ADA claim is simply wrong. "Although the facts alleged may be "meager," a complaint survives a motion to dismiss as long as it specifically refers to the underlying facts of the disability or perceived disability." *Blackburn v. Trustees of Guilford Technical Cmty. Coll.*, 733 F.Supp.2d 659, 663 (M.D. N.C.2010). "It is 'not required, at this early pleading stage, to go into particulars about the life activity affected by [the] alleged disability or detail the nature of [the] substantial limitations."' *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (more specific disability allegations not needed, even after *Twombly* and *Iqbal*) (cited by *Mary's House, Inc. v. North Carolina*, 976 F. Supp. 2d 691 (M.D.N.C. 2013).

In the Complaint, Plaintiffs describe their disabilities. It expressly includes all disabled persons experiencing homelessness with severe and persistent mental illness, including those who qualify under Full-Service Partnership – a disability under the Act [FAC ¶ 80-96]. At this stage, Plaintiffs' facts must be taken as true.

In addition, Title II of the ADA incorporates claims for individuals who are regarded by a public entity as having a physical or mental impairment that substantially limits a major life activity, whether or not that person actually has an

impairment. 42 U.S.C.A. § 12102(1). Analysis applicable to the "regarded as disabled" standard under the ADA focuses not on plaintiff's actual abilities, but rather on reactions and perceptions of persons interacting or working with him. Americans with Disabilities Act of 1990, § 3(2), 42 U.S.C.A. § 12102(2); 29 C.F.R. § 1630.2(l).  Inquiry into how an individual was "regarded" for purposes of an ADA claim based on perceived disability is necessarily quite fact-specific and all surrounding circumstances may be relevant in reaching a conclusion. ADA 1990 §3(2), 42 U.S.C.A. § 12102(2); 29 C.F.R. § 1630.2(l). *See Tice v. Ctr. Area Transportation Authority*, 247 F.3d 506, 515 (3rd Cir. 2001).

In this instance, Plaintiffs allege that Defendant was motivated to cancel the agreement based on the growing number of persons at Mary's Kitchen whom the City perceives to be mentally ill, including those enlisted to assist in providing services to others in view of the shortage of older volunteers during the pandemic. FAC ¶¶ 25, 27, 30-33.  Although Defendant used coded language, there is no mistake that the City's terminated the contract because of the increasing number of people with, or perceived to have, some form of mental illness.  In fact, the termination notice specifically identified the "change in clientele over the past few years," referencing increased number of persons with trauma, mental health conditions, and substance-use disorders – all protected disabilities. FAC ¶32.  "[E]ven an innocent misperception based on nothing more than a simple mistake of fact as to the severity, or even the very existence, of an individual's impairment can be sufficient to satisfy the statutory definition of a perceived disability." *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 144 (3d Cir. 1998).

There are three main prongs of this "regarded as disabled" standard. The third prong recognizes circumstances where the person has "none of the impairments defined in the regulation but is treated by a covered entity as having a substantially

23

limiting impairment." 29 CFR § 1630.2(l). This prong was taken from section 504 of the Rehabilitation Act of 1973.  In a case involving a woman who had tuberculosis several years before her employer terminated her because of fears of its contagiousness, the Supreme Court recognized that "Congress acknowledged that society's accumulated myths and fears about disability and diseases are as handicapping as are the physical limitations that flow from actual impairment." Therefore, the Court decided such individuals are covered under section 504. *Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273 (1987).

The Plaintiff class members undergo significant obstacles, with some due to the disabilities they have, but also because of the myths and fears about mental health disabilities put upon them by the wider public and, particularly, the City. Plaintiffs have alleged a plausible claim that, because of these fears, the City seeks to shut down the only provider in the City who serves those who have mental health disabilities, leaving the individuals without access to meals, showers, mail, medical care, and basic referral to shelter and housing.

Defendant argues that Plaintiffs cannot maintain a disability claim because they did not request an accommodation. MTD 41:8-17. No disability accommodation was necessary in this instance.  "Where a Plaintiff challenges a program's policy or practice of failing to remedy systemic barriers, rather than the individual's experience with requesting accommodations to address those barriers, the type of claim is more appropriately evaluated under the disparate impact framework than the failure to reasonably accommodate framework." *Payan v. Los Angeles Community College District*, 11 F. 4th 729, 738 (9th Cir. 2021).

Plaintiffs plead a plausible disability claim and Defendant's motion to dismiss this claim must be denied.  *Blackburn, supra*, 733 F.Supp.2d at 663.

24

# X. PLAINTIFFS EIGHTH CAUSE OF ACTION PLEADS A PLAUSIBLE CLAIM BANE ACT VIOLATION

California Civil Code section 52.1, known as the Bane Act, creates a civil right of action for interference, or attempted interference, with federal and state constitutional and statutory rights by threats, intimidation, or coercion.  In an action under the Bane Act, the moving party may seek injunctive relief, damages, or other equitable relief. *Id.*  Defendant erroneously argues that Plaintiffs cannot plead a Bane Act claim because 1) the City's conduct was lawful; 2) Plaintiffs cannot allege plausible facts of threatened or actual "violence" by Defendant; 3) Plaintiffs cannot allege any "threats, intimidation, or coercion" by the City; and 4) Plaintiffs' claims of a Bane Act violation necessarily and completely fail because they did not exhaust administrative remedies under Government Code §910 et seq.  MTD 43-44.

The Bane Act provides for a civil action for damages, injunctive and other equitable relief when a person's "exercise or enjoyment" of constitutional rights has been interfered with "by threat, intimidation, or coercion." *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 799 (9th Cir. 2018) (California Supreme Court has not held "that [Bane Act] requires threats, intimidation, or coercion beyond that inherent in the constitutional violation itself.").  Specifically, *Rodriguez* relied on *Venegas v. Cty of Los Angeles*, 32 Cal. 4th 820 (2004).

The core of a Bane Act claim is that "the defendant, by the specified improper means . . . tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or force the plaintiff to do something he or she was not required to do." *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007).  "[T]hreats of unconstitutional enforcement actions" are sufficient to show "coercion" under the Bane Act and no additional evidence of a "threat, intimidation or coercion" separate from or even "in addition to" the alleged constitutional violations is required. *Rodriguez*, 891 F.3d at 799-801.   Plaintiffs

25

allege "threats, intimidation and coercion" by the City police sufficient to support a justiciable claim. They need not wait to be arrested to challenge threats of criminal sanctions. *See Steffel v. Thompson*, 415 U.S. 452 (1974).

Plaintiffs have plausibly alleged that they have been subjected to threats, intimidation and coercion to force them to abandon their constitutional and statutory rights. They have alleged the police actions in the public forum outside Mary's Kitchen and the enforcement of the illegal loitering provision in the Orange Municipal Code. *See* Section VII, *supra*. Plaintiffs have also alleged coercion by the City to compel Mary's Kitchen to exclude persons with disabilities as a condition of continuing to operate at its decades-long location. *See* Sec. IX, *supra.*

The ability to obtain declaratory and injunctive relief in the face of a Bane Act violation is critical "to protect the peaceable exercise or enjoyment of the right or rights secured," and "to eliminate a pattern or practice of conduct." Civ. Code, § 52.1 (c). Defendant's actions are a direct violation of the Bane Act because the enforcement and threatened enforcement of the City's "loitering" provision, and the demand that Plaintiff Mary's Kitchen enforce this unlawful exclusion from a public forum is a violation of Plaintiffs' constitutional rights. Plaintiffs allege that Defendant used repeated threats, intimidation, and coercion to scare the Plaintiff class away from outside Mary's and bolster Defendant's false assertions that Mary's was somehow to blame for illegal activity near the facility. FAC ¶¶ 36,48.

Plaintiffs may bring a Bane Act claim on behalf of a class. *Schilling v. Transcor Am., LLC*, No. C 08-941 SI. 2010 U.S. Dist. LEXIS 20786, *36, 2010 WL 583972 (N.D. Cal. 2010); *Craft v. County of San Bernadino*, No. EDCV 05-359-SGL, 2006 U.S. Dist. LEXIS 96979, 2006 WL 4941829 (C.D. Cal. 2006). The remedies available under the Bane Act are in addition to "any other action, remedy, or procedure that may be available to an aggrieved individual under any other

26

provision of law." This includes the "remedy" codified by California Code of Civil Procedure § 382, the class action statute.  Id.  Civ. Code § 52(g)).

Defendant also argues that the Bane Act claim is barred in its entirety because Plaintiff did not comply with administrative exhaustion requirements of the California Tort Claims Act. Cal. Civil Code, § 52.1(h). *See Butcher v. City of Marysville,* 398 F. Supp. 3d 715, 727 (E.D. Cal. 2019).  MTD 44-5.  No prefiling is required for injunctive and declaratory relief. California Government Code § 905 only requires serving a prelitigation claim against a local public entity for "all claims for money or damages[.]" (Gov. Code § 905.)  The statute does not require prefiling a claim for injunctive relief or declaratory relief. *Minsky v. City of Los Angeles*, 11 Cal.3d 113, 121 (1974).

## XI.    PLAINTIFFS' NINTH CAUSE OF ACTION FOR A HOUSING ELEMENT VIOLATION IS PLAUSIBLE
### A.  Plaintiffs Allege Multiple Violations of the Housing Element

California Government Code, § 65580 et seq., mandates statutory obligations each City and County must follow to certify their General Plan  under the Housing Element.  The Housing Element requires every city (1) adequately zone property that can be used "by right" to meet emergency shelter needs within that jurisdiction, and (2) ensure all land-use action taken is consistent with its operative Housing Element and its General Plan. FAC ⁋⁋154, 157.  Failure to meet either of these elements is sufficient to pursue a claim for a violation of state law. Defendant fails both requirements based on facts alleged in the FAC that must be taken as true. Defendant does not dispute or address these claims. Instead, it contends that, if no

shelter can be built by right on the current property, it cannot be in violation of the law. There is no support for that statement.[6]

State law requires that the "identified zone or zones shall include sufficient capacity to accommodate the need for emergency shelter." Cal Gov Code § 65583. The FAC alleges that the City's zone is sufficient, and that Mary's Kitchen only learned this after the notice of termination was served and they then the search to purchase property and found no suitable property in the zone. FAC pp. 44.

Taking these facts as true, the City is not in compliance with SB2 because, while it has zoned a small section of the City to meet SB2 requirements, , there is not a single location in that zone available for a shelter. Based on the facts alleged in the FAC, even if the City has zoned property under the Housing Element, its failure to provide for a sufficiently sizable property zonewith properties that can be used for shelter and that takes into account "access to public services and facilities" puts it out of compliance with the Housing Element.  Cal Gov Code § 65583.

If a court finds that an action of a city does not comply with its housing element, the city must come into compliance with state law within 60 days. Cal Gov Code § 65587.  Land-use decisions of general law cities must be consistent with the state-approved General Plan. *Corona-Norco Unified School Dist. v. City of Corona*, 17 Cal. App. 4th 985, 994 (1993)[7]. A project is consistent with the general plan " 'if, considering all its aspects, it will further the objectives and policies of the general

_____

[6] Defendant City of Orange has not adopted a 2021 Housing Element and is currently out of compliance with the law. See Housing Element Compliance Report. https://www.hcd.ca.gov/housing-elements-and-apr-download

[7] While some cited cases are about CEQA determinations, the principles of the Consistency Doctrine for the General Plan apply the same way to the Housing Element as to CEQA or any other portion of the General Plan.

plan and not obstruct their attainment.' " *Families Unafraid to Uphold Rural El Dorado County v. El Dorado County Bd. of Sup'rs*, 74 Cal.Rptr.2d 1, 3 [ ] (3rd App. Dist., 1998).  (Edits supplied.)

Consistency means that the government cannot "articulate a policy in its general plan and then approve a conflicting project." *Endangered Habitats League, Inc. v. County of Orange*, 32 Cal. Rptr. 3d 177, 186 (2005). Similarly, an action can never be found "consistent" when the city is operating under an invalid general plan. *Guardians of Turlock's Integrity v. Turlock City Council*, 149 Cal.App.3d 584, 598 (1983). A general plan must include an approved housing element. *Camp v. Board of Supervisors* 123 Cal.App.3d 334, 348, 350 (1981).  Plaintiffs allege that the City has taken a series of actions each of which is inconsistent with the Housing Element portion of the General Plan. FAC pp. 2-3, 44-45.  There is no  exception in the law for "inconsequential" acts. "Substantial compliance means actual compliance with respect to the substance essential to every reasonable objective of the statute, as distinguished from simple technical imperfections of form." *Black Property Owners Assn. v. City of Berkeley*, 22 Cal. App. 4th 974, 980 (1994).

As Plaintiffs allege, the City's Housing Element expressly relied on the services provided by Plaintiff to meet statutory requirements and gain State approval for its General Plan. FAC pp. 2-3, 22.  Closing Mary's Kitchen will likely eliminate entirely services detailed in its Housing Element without consideration of the impact on the area zoned for shelter in the City that depended on these services.  The City's unilateral breach of the land-use agreement without a full plan to ensure uninterrupted services puts the City out of compliance with the approved Housing Element. Finally, Plaintiffs allege that the City failed to answer Mary's Kitchen's request to be a Navigation Center.  Plaintiff should have been allowed to provide

1    overnight shelter beds by right, subject only to limits on the same conditions applied

2    to other properties in the SB2 zone. Cal Gov Code § 65583(a)(4)(A)(i)-(viii).

3        An act by a government entity is inconsistent with the Housing Element if it

4    conflicts with even one policy in the Housing Element, General Plan or the City's

5    obligations under state law. *San Bernardino Valley Audubon Society, Inc. v. County*

6    *of San Bernardino*, 155 Cal.App.3d 738 (1984).  Plaintiff alleges multiple conflicts

7    in Defendant's actions here. Therefore, the FAC pleads a plausible claim.

8                **A.        No Statute of Limitations Bar Applies**

9        The City argues that Plaintiffs' claims are outside the Statute of Limitations.

10   MTD IX, based on a provision that applies a 90-day statute of limitations for

11   challenges brought after the initial adoption of a General Plan.  Cal. Gov. Code

12   65009(c)(1).   Defendant is wrong.   The time to sue depends on the "specific

13   governmental act or acts" that are challenged. *Avenida San Juan Partnership v. City*

14   *of San Clemente,* 201 Cal.App.4th 1256, 1275 (2011). 1274-1278 (2011).   To

15   "pinpoint" when the time limit begins to run on a claim based on a land-use

16   restriction, the specific act must be identified. *Id.* at at 1275.

17       There is no "act" by the City to trigger the statute of limitations: there must

18   be a final determination that starts the 90-day limit.  Inaction is not an action by

19   government officials. *Id.* 1275 (final administrative adjudication by City Council

20   denying development application). There was no administrative determination, let

21   alone any response, by the City on Plaintiff's request to become a navigation center,

22   so no (in)action on this issue could have triggered the statute.

23       Similarly, no action here started the statute of limitations running on a

24   challenge to the lack of adequate zoned property for a shelter.  It was discovered

25   during the pending litigation and detailed in the FAC. It could not have been brought

26   before it was known and there was no reason why Plaintiff would have been aware

27                                              30

of the need to investigate this failure in the City's General Plan until the City decided to shut Mary's Kitchen. Finally, there has not yet been an action to close Mary's Kitchen completely. If Defendant takes formal action to file an unlawful detainer, that might arguably trigger the statute, but since it has not occurred it is not a bar at this point.  In any event, late discovery of the onset of damages in land-use decisions requires equitable tolling. *Concerned Citizens of Costa Mesa, Inc. v. 32nd Dist. Agricultural Assn.*, 42 Cal. 3d 929, 938 (1986)[8].  The motion fails on this basis.

## XII. PLAINTIFFS TENTH CAUSE OF ACTION PLEADS A PLAUSIBLE CLAIM OF ULTRA VIRES ACTIONS

Plaintiffs allege that the City Manager acted in excess of his authority when he abruptly terminated the agreement with Mary's Kitchen. FAC ¶¶33-34.  There are limits to the City Manager's authority. FAC ¶8 fn 6.  Defendant disputes Plaintiffs' allegation that the City Manager had no authority to end the agreement but cites no case to support the proposition and purposely misinterprets the City's municipal code to imply general contract authority in direct conflict with state law.

Pursuant to California law, the City Manager's powers and duties are set forth in the City's municipal code. OMC Ch. 2.16 (MTD, Ex. 3, pp. 38-39.); *see* Cal. Govt Code, § 34852. This chapter details the City Manager's general authority "under the direction and control of the City Council except as otherwise provided…" Mun. Code, § 2.16.020 ("Duties"); *see also* OMC § 2.16.030 ("Powers"). While the City Manager has the *duty* to "[s]ee … that all … contracts … granted by the City are

---

[8] Plaintiffs reference consideration of equitable tolling for other state land use law including CEQA as the analysis is the same or similar.

31

faithfully observed," the general *power* to contract on behalf of the City is not included in their duties or powers.[9]

The City admits that its municipal code requires prior approval of the Council for the City to enter into contracts "[u]nless another officer is authorized" by the code. MTD: 13:26-28, citing OMC § 3.08.095. The City argues this provision provides a general contracting power to the City Manager. *Id*. But the power to enter and terminate contracts and leases related to City property is not in the City Manager's enumerated duties or powers, and in fact is restricted by state law. See Govt. Code, §§ 34000, 37350-37351, 37380. Only the legislative body of a city may "purchase, lease, receive, hold, and enjoy real and personal property" and "control, dispose of, and convey such property." Govt. Code, § 37351; *S. Bay Senior Hous. Corp. v. City of Hawthorne*, 56 Cal.App.4th 1231, 1235-1236 (1997).

A reviewing court presumes the validity of a local ordinance but cannot interpret a general law city ordinance in conflict with general laws. *Water Quality Ass'n v. County of Santa Barbara*, 44 Cal.App.4th 732, 740-741 (1996), citing Cal. Const., art. XI, § 7 ("A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."). So, even if a general contract authority to enter and end leases of City property arguably could have been delegated by the City Council pursuant to OMC § 2.16.020(J) (in direct conflict with state law), no admissible evidence before the Court at the pleading stage of the case supports decisively that such a general delegation occurred and was fully consistent with State and other City laws.

---

[9] The power to contract is arguably incidental to certain delegated tasks: e.g., hiring and firing (§ 2.16.020(A-B)), or purchase of supplies and equipment (§ 2.16.020(I)), but this cannot expand authority in conflict with state law.

To the contrary, all available evidence, including the City's lengthy course of conduct with respect to the Mary's Kitchen agreement, shows this authority was *not* delegated. Up to and including renewal of the agreement in 2019, consistent with state law, the City Council, with City staff's recommendation and the Mayor's signature, approved all agreements with Plaintiff. FAC, ¶¶ 20-21, 169.

Even if the City Council expressly gave the City Manager authority to *renew* the agreement, that did not give authority to end it. FAC, ¶ 21. The contract words clearly distinguish between the inherent authority of the Council and Mayor and the limited authority delegated to the City Manager.  Under the canon of interpretation *expressio unius est exclusio alterius,* the inclusion of such authority within a contract (or by ordinance) excludes alternatives outside its specific terms.  *G & W Warren's, Inc. v. Dabney*, 11 Cal.App.5th 565, 576 (2017) (contract); *Woody's Group, Inc. v. City of Newport Beach*, 233 Cal.App.4th 1012, 1026 (2015) (ordinance).[10]

The Ultra Vires doctrine forbids acts beyond the scope of authority or power of a public agency or entity. *Dresser v. Torrance*, 140 Cal.App.2d 42, 45 (1956) (invalidating action to remove two building inspectors for failing to properly enforce building codes as unauthorized by the municipal code). Because it was "contrary to law," the order was "of no legal consequence." *Id*. at 49.  Here, too, the city manager of a general law city did not have delegated general contracting power, which would conflict with state law expressly limiting the power to lease city property to the city's

_____

[10] An absurd result would follow if a contract or municipal code could require legislative action to enter a lease, but not to terminate it, allowing a rogue city manager to unilaterally exit any contract on a personal bias. See *Schoshinski v. City of Los Angeles*, 9 Cal.App.5th 780, 795 (2017) (contract); *Lateef v. City of Madera*, 45 Cal.App.5th 245, 253 (2020) (ordinance).

legislative body. Govt. Code, § 37351. The City Manager acted without authority, so termination of Plaintiff's lease was ultra vires and void.

## XIII.   PLAINTIFFS ELEVENTH CAUSE OF ACTION DISCRIMINATORY INTENT OR IMPACT IS PLAUSIBLE

The Motion to Dismiss hinges on the idea that (1) the Plaintiffs impacted is too broad a group to have a disparate impact and (2) disparate impact can only be shown through statistical evidence.[11] Neither of these claims are based on existing law. Disparate treatment involves a showing of intentional discrimination, provable by either direct or circumstantial evidence. *Kormoczy v. Sec'y, U.S. Dep't of Housing and Urban Dev.*, 53 F.3d 821, 823-24 (7th Cir. 1995).

### A. Disparate Impact on a Specific Group of People is Alleged

"[D]isparate-impact claims are cognizable under the ADA." *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003). See 42 U.S.C. § 12112(b). Plaintiffs allege that the City actions leading up to and including the termination notice to Mary's Kitchen were intended to and will have a discriminatory impact on a specific group of people, evinced by use of code phrases like "change in clientele". FAC ℙ32. Defendant contends Plaintiffs allege discriminatory intent or effect for "a protected class at large." MTD p. 45. Plaintiffs' claim is narrower: they allege disparate impact on unhoused people with disabilities in the City. FAC ℙ175.

### B. Disparate Impact Maybe be Alleged Through Facts Alone

Claims of disparate treatment and disparate impact do not require specific types of evidence to survive a motion to dismiss. At the pleading stage, a plaintiff

---

[11] Cal. Code Regs. Tit. 2, §12060 prohibits practices with a discriminatory effect. The motion to dismiss did not address this claim so Plaintiffs do not address it now.

34

may allege facts *or* produce statistical evidence showing a causal connection. *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.,* 576 U.S. 519, 542-3 (2015). Plaintiff "must show only that a facially neutral business practice had a significant adverse effect on" a protected class. *Pottenger v. Potlatch Corp.,* 329 F.3d 740, 749. A plaintiff *may* use statistics to show an intent to discriminate. *Id.* at 747. Disparate treatment requires proving the protected feature has a "determinative influence" on the outcome. Disparate impact, unlike disparate treatment, does not require that a person be treated less favorably based on a protected characteristic, but rather calls for proof that a facially neutral policy unjustifiably falls more harshly on a protected group. *Raytheon,* 540 U.S. at 52.

The FAC alleges that the proposed "plan" the City provided to the Court involved limited access to medical care, loss of a mailing address for VA medication and benefits, and lengthy travel to other cities to access basic hygiene, nutrition, and other services now all at Plaintiff. FAC ¶11-15. Each result has a unequal impact on people with disabilities sufficient to state a plausible claim.

## XIV.   CONCLUSION

Based on the foregoing, Plaintiffs allege sufficient facts and plausible claims to proceed to discovery. To the extent the Court grants the motion on any claim, Plaintiffs request an opportunity to amend the Complaint.

Dated: February 14, 2022             Respectfully submitted,

ELDER LAW & DISABILITY RIGHT CENTER

_____/s/ Brooke A. Weitzman_____.
BY: BROOKE A. WEITZMAN
Attorneys for Plaintiffs

35